**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Fernando Hernandez Richter,

                Petitioner,

v.

David Shinn, *et al.*

                Respondents.

No. CV-20-00205-TUC-CKJ (EJM)

**REPORT AND RECOMMENDATION**

Currently pending before the Court is Petitioner Fernando Hernandez Richter's Third Amended Petition for a Writ of Habeas Corpus ("Third Amended Petition") (Doc. 50). Respondents have filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 55), and Petitioner has replied (Doc. 81). The Third Amended Petition (Doc. 50) is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation. The Magistrate Judge recommends that the District Judge deny the Third Amended Petition (Doc. 50).

. . .

. . .

. . .

. . .

. . .

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

# I.      FACTUAL AND PROCEDURAL BACKGROUND

## A.      *Initial Charge, Trial, and Sentencing*

The Arizona Court of Appeals stated the facts[2] as follows:

> [F]or a period of years, including three months in the home where they were ultimately found, Richter forced his three step-children to stay in their rooms, only occasionally allowing them out, watching and primarily communicating with them through the use of cameras.  They did not attend school, and Richter limited their water consumption, bathroom use, and contact with each other; rarely allowed them to bathe; denied them hygiene products; and struck them with a stick, "belt and a metal spoon" or wire if they disobeyed him.  On the night they were discovered, two of the children had fled the house after Richter broke the door of their room while attempting to enter and holding a knife.

*State v. Richter*, No. 2 CA-CR 2016-0112, 2017 WL 491137, at *1 (Ariz. Ct. App. 2017).

On December 6, 2013, Petitioner was indicted on three (3) counts of kidnapping, domestic violence; two (2) counts of aggravated assault with a deadly weapon/dangerous instrument, domestic violence; one (1) count of aggravated assault on a peace officer; and three (3) counts of child abuse, a person under eighteen years, non-death or serious physical injury not likely, domestic violence.  Answer (Doc. 55), Amended Indictment, *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Dec. 6, 2013) (Exh. "A").  On August 24, 2013, the trial court severed Count Six, aggravated assault on a peace officer.  Answer (Doc. 55), *State v. Richter*, No. CR 20135144, Minute Entry at 57 (Pima Cnty. Super. Ct. Aug. 24, 2015) (Exh. "N").[3]  Following a jury trial on the eight (8) remaining counts, Petitioner "was convicted of three counts of kidnapping, domestic violence offenses and dangerous crimes against children; two counts of aggravated assault, domestic violence offenses and dangerous crimes against children; and three counts of child abuse,

---

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519 (1982).

[3] Page citations refer to the CM/ECF page numbers, unless otherwise noted.

domestic violence offenses." *Richter*, 2017 WL 491137, at \*1; *see also* Answer (Doc. 55), *State v. Richter*, No. CR20135144, Minute Entry (Pima Cnty. Super. Ct. Dec. 4, 2015) (Exh. "KK").  Petitioner was sentenced to "slightly mitigated," consecutive sentences with imprisonment in the Arizona Department of Corrections of thirteen (13) years for the first two (2) kidnapping, domestic violence convictions (Counts One and Two); a minimum, consecutive, four (4) year term of imprisonment for the third kidnapping, domestic violence conviction (Count Three); "slightly mitigated," thirteen (13) year terms of imprisonment on the aggravated assault, deadly weapon/dangerous instrument, domestic violence convictions (Count Four and Count Five) to run consecutively with one another and following the term imposed on Count Three; and "slightly mitigated," two (2) year terms of imprisonment on the child abuse, a person under eighteen years, non-death or serious physical injury not likely, domestic violence convictions, to be run concurrently with one another, but following the term imposed on Count Five.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry, (Pima Cnty. Super. Ct. Mar. 10, 2016) (Exh. "VV").  Accordingly, Petitioner's sentence of imprisonment totaled fifty-eight (58) years.

### B.    Direct Appeal

On March 11, 2016, Petitioner filed his Notice of Appeal.  Answer (Doc. 55), Not. of Appeal, *State v. Richter*, No. CR2013-5144-001 (Pima Cnty. Super. Ct. Mar. 11, 2016) (Exh. "YY").  On September 19, 2015, counsel for Petitioner filed an *Anders*[4] brief with the Arizona Court of Appeals.[5]  *See* Third Amended Pet. (Doc. 50), Appellant's Opening

---

[4] *Anders v. California*, 386 U.S. 738 (1967).

[5] The Arizona Court of Appeals has described the procedure of filing an *Anders* brief as follows:

> Under our procedure, when appointed counsel determines that a defendant's case discloses no arguable issues for appeal, counsel files an *Anders* brief. The brief contains a detailed factual and procedural history of the case, with citations to the record. *See Scott,* 187 Ariz. at 478 n.4, 930 P.2d at 555 n.4. Counsel submits the brief to the court and the defendant. The defendant is then given the opportunity to file a brief *pro per.* After receiving all briefing, the court reviews the entire record for reversible error. If any arguable issue presents itself, the court directs appointed

Br. (*Anders*), *State v. Richter*, No. 2 CA-CR 2016-0112 (Ariz. Ct. App. Sept. 19, 2015) (Doc. 50-4). Counsel averred that he "ha[d] searched the record on appeal and [wa]s unable to find any arguable question of law that is not frivolous." *Id.* at 38. Petitioner did not file a supplemental brief. *State v. Richter*, No. 2 CA-CR 2016-0112, 2017 WL 491137, at *1 (Ariz. Ct. App. Jan. 24, 2017).

On January 24, 2017, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. *See id.* The appellate court "searched the record for fundamental, reversible error and . . . found none." *Id.* at *1. The appellate court determined that "the evidence was sufficient to support the jury's finding of guilt" and "conclude[d] the sentence imposed [wa]s within the statutory limit." *Id.* Petitioner did not file a Motion for Reconsideration or a Petition for Review with the Arizona Supreme Court. *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2016-0112, Mandate (Ariz. Ct. App. Apr. 12, 2017) (Exh. "BBB") (Doc. 55-1). As such, on April 12, 2017, the Arizona Court of Appeals issued its Mandate. *Id.*

### C.    *Post-Conviction Relief Proceeding*

#### 1.  **PCR Petition**

On May 8, 2017, Petitioner filed his Notice of Post-Conviction Relief ("PCR"). Answer (Doc. 55), Petr.'s Not. of PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. May 8, 2017) (Exh. "CCC") (Doc. 55-1). On February 27, 2018, Petitioner filed his Petition for Post-Conviction Relief, alleging three (3) grounds for relief. *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). First, Petitioner asserted that

---

counsel to brief the issue. Only after the court has ascertained that counsel has conscientiously performed his or her duty to review the record, and has itself reviewed the record for reversible error and found none, will the court allow counsel to withdraw. *See State v. Shattuck,* 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). We conclude that this procedure permits counsel to perform ethically, while simultaneously ensuring that an indigent defendant's constitutional rights to due process, equal protection, and effective assistance of counsel are protected.

*State v. Clark*, 2 P.3d 89, 96 (Ariz. Ct. App. 1999).

he was denied his Sixth Amendment right to counsel, because trial counsel was ineffective when he allegedly abandoned the presentation of a Guilty Except Insane ("GEI") defense. *Id.*, Exh. "EEE" at 20–21.  Petitioner claimed that defense counsel failed to "consult[] with someone qualified to do a neuropsychological examination," or "seek a further examination[,] to advocate for or advance a Guilty Except Insane defense[,] . . . [or] challenge[] Judge Bernini's order forbidding a Guilty Except Insane defense[.]" *Id.*, Exh. "EEE" at 16–17.  Next, Petitioner asserted that he was deprived of his right to effective assistance of appellate counsel.  *Id.*, Exh. "EEE" at 21–22.  Petitioner urged that appellate counsel did not adequately review the record prior to filing an *Anders* brief, depriving Petitioner of an adequate appeal.  *Id.*, Exh. "EEE" at 17–19, 21–22.  Finally, Petitioner asserted that the trial court denied him his Sixth Amendment right to counsel when it denied his request for new counsel, did not allow time for counsel to confer privately with him, and conducted an inadequate *Torres*[6] hearing.  Answer (Doc. 55), Petr.'s Pet. for PCR at 8–13, 22, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2).

### 2.  Rule 32 Court Order

On July 31, 2018, the Rule 32 court issued its order denying Petitioner's Petition for Post-Conviction relief.  *See* Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).  The Rule 32 court first considered its denial of Defendant's request for new counsel and the adequacy of the *Torres* hearing.  *Id.*, Exh. "14" at 42–44.  The court observed that "'[t]he Sixth Amendment guarantees criminal defendants the right to representation by counsel[;]' . . . [h]owever, an indigent defendant is not 'entitled to counsel of choice or to a meaningful relationship with his or her attorney.'" *Id.*, Exh. "14" at 42 (citing *State v. Torres*, 93 P.3d 1056, 1058 (Ariz. 2004) (en banc); then citing *State v. Moody*, 968 P.2d 578, 580 (Ariz. 1998)).  The Rule 32 court went on to outline the factors to be considered when addressing a request to change counsel,

---

[6] *State v. Torres*, 93 P.3d 1056 (Ariz. 2004) (en banc).

including 1) the existence of an irreconcilable conflict; 2) whether new counsel would be confronted by the same conflict; 3) timing of the motion; 4) inconvenience to witnesses; 5) amount of time elapsed since the alleged offense; 6) defendant's proclivity to change counsel; and 7) quality of counsel. *Id.*, Exh. "14" at 42–43 (quoting *Moody*, 968 P.2d at 580 (citations omitted)).  The court further observed that "in most cases, the 'quality of counsel' factor will not be a consideration when a defendant seeks a substitution of counsel." *Id.*, Exh. "14" at 43 (citing *Torres*, 93 P.3d at 1060).  The Rule 32 court noted that upon receipt of two *ex parte* letters requesting a change of counsel, it held a *Torres* hearing at the earliest opportunity, which was eight (8) weeks before trial and twenty-one (21) months after indictment.  Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 43 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).  The court reviewed the *Torres* hearing record, including Defendant's and counsel's respective positions. *Id.*  The court also reviewed Defendant's claims to Bradley Johnson, M.D. regarding the number of meetings with counsel, found those statements to be inaccurate, and observed that prior to Defendant's letters to the court, "trial counsel visited with Defendant a minimum of 12 times, most for 'unknown duration(s).'" *Id.*, Exh."14" at 44.  The Rule 32 court concluded that Defendant had failed to meet his burden to show either a complete breakdown in communication or an irreconcilable conflict. *Id.*, Exh. "14" at 43–44.

Next, the Rule 32 court considered Defendant's ineffective assistance of counsel claims. *Id.*, Exh. "14" at 45–48.  The court outlined the *Strickland*[7] test which requires Defendant to prove counsel's performance was deficient and caused prejudice.  Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 45 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).  The Rule 32 court went on to evaluate Defendant's allegation of trial counsel's ineffectiveness "based on 'counsel's abandonment of presenting a Guilty Except Insane ('GEI') defense.'" *Id.*  The court delineated the following timeline of counsel's work

---

[7] *Strickland v. Washington*, 466 U.S. 668 (1984).

regarding Defendant's competency:

> **February 28, 2014** – Motion for Mental Condition Evaluation and Stay of Proceedings.
>
> - April 15, 2014 - Rule 11 Evaluation Report – Michael P. Christiansen, Ph.D. - **Ex 18A, p. 9**
>   - ❖ *"Competent"*
> - May 12, 2014 – Rule 11 Evaluation Report – Bradley R. Johnson, M.D. - **Ex 19, p. 7**
>   - ❖ *"Not Currently Competent, likely able to be able to [sic] brought to competence within a short period of time."*

> **September 8, 2014** – Requested a GEI Evaluation. *See* Minute Entry dated September 8, 2014.
>
> - October 28, 2014 – GEI Evaluation Report – Michael P. Christiansen, Ph. D. - **Ex 18B, p. 9**
>   - ❖ *"Not afflicted with mental disease or defect of such severity that he did not know the criminal act was wrong at the time of the offense."*

> **September 25, 2014** – Retained Paul Simpson to Conduct Psychological Evaluation. *See* Appendix B, Exhibit 21, Psychological Evaluation.
>
> - July 8, 2015 – Psychological Evaluation – Paul Simpson, Ed.D. – **Ex 21, p. 144**
>   - ❖ *"[B]ased on information obtained from available records and self-reporting regarding Defendant's mental health history and considered to have been possible present in a mild to moderate degree at or around the time of the offenses as described below.*
>     - *295.90 Schizophrenia, with Delusion, multiple episodes, currently in partial remission;*

- *317.0 Intellectual Developmental Disorder, Mild;*

- *309.81 Posttraumatic Stress Disorder, by history and self-report;*

- *Rule in / out 331.83 Major or Mild Neurocognitive Disorder Due to Traumatic Brain Injury."*

*Id.*, Exh. "14" at 46–47 (alterations in original) (punctuation in original). The Rule 32 court observed that following defense counsel's request for a mental competency examination, the proceedings were stayed; two (2) evaluations occurred, with Dr. Christiansen finding Defendant competent and suggesting possible malingering, and Dr. Johnson opining that Defendant was not currently competent but likely restorable; and Defendant was subsequently restored. *Id.*, Exh. "14" at 45–47. The Rule 32 court further noted that defense counsel sought a GEI evaluation, which was also performed by Dr. Christiansen. *Id.* The Rule 32 court also noted that "Dr. Christiansen concluded, 'In [his] professional opinion, data indicates at the time of the commission of the criminal act, the defendant was not afflicted with a mental disease or defect of such severity that he did not know the criminal act was wrong.'" Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 46 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4). The Rule 32 court indicated that "[t]he trial judge accepted these findings and ruled Defendant ineligible for the GEI defense." *Id.* (citations omitted). The Rule 32 court found defense counsel's decisions not to seek reconsideration of the trial court's decision or otherwise pursue a second GEI evaluation were not unreasonable. *Id.*, Exh. "14" at 46. The Rule 32 court concluded that Defendant had failed to meet his burden to show defense counsel fell below prevailing norms or had been otherwise ineffective. *Id.*, Exh. "14" at 47.

Finally, regarding appellate counsel's alleged ineffectiveness, the Rule 32 court reiterated the *Strickland* standard. *Id.* The court also stated the requirements of appellate counsel as required by *Anders*, including filing "a brief referring to anything in the record that might arguably support the appeal." Third Amended Pet. (Doc. 50), *State v. Richter*,

No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 48 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4) (citing *Anders v. California*, 386 U.S. 738, 744 (1967)).  The Rule 32 court observed that appellate counsel's *Anders* brief included an eighteen (18) page "Statement of Relevant Facts" with specific citations to Defendant's fifteen (15) day trial transcript.  *Id.*  Additionally, the court noted that defense counsel sought leave for "Defendant to submit a supplemental brief in *propria persona*[,] [which] Defendant then failed to do[.]"  *Id.*  The Rule 32 court found "Defendant's conclusory claims [to be] inadequate as he fail[ed] to cite to any specific error(s) in either fact[] or law[,] . . . [and] fail[ed] to support [his] claims by affidavit or otherwise."  *Id.*  The Rule 32 court also found that "Defendant fail[ed] to show prejudice[.]"  *Id.*  The Rule 32 court concluded that appellate counsel "did not fall below an objective standard of reasonableness as defined by prevailing professional standards[.]"  Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 48 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).

As such, the Rule 32 court denied Defendant's Petition for PCR.  *Id.*, Exh. "14" at 49.

### 3.  **PCR Appeal**

Petitioner sought review of the Rule 32 court's order.  *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).  On April 8, 2019, the Arizona Court of Appeals issued its memorandum decision granting review, but denying relief.  *See id*.  The appellate court stated the standard of review, indicating that it would "not disturb a trial court's ruling on a petition for post-conviction relief absent a clear abuse of discretion[,]" and found "Richter ha[d] not sustained his burden of establishing such abuse[.]"  *Id.*, Exh. "GGG" at 33.  The appellate court observed that "[t]he trial court summarily denied relief in a through, well-reasoned minute entry."  *Id.*  The court noted that "[o]n review, Richter essentially repeat[ed] his claims and argue[d] the trial court abused its discretion in denying his petition for post-conviction relief."  *Id.*  The appellate court found that "[t]he [Rule 32]

court clearly identified the claims raised and resolved them correctly in its minute entry, which we adopt." Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision at 33 (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2) (citing *State v. Whipple*, 866 P.2d 1358, 1360 (Ariz. Ct. App. 1993)). The appellate court also "reject[ed] Richter's assertion on review that the court abused its discretion by denying his claim of ineffective assistance of trial counsel '[w]ithout factual analysis.'" *Id.* at 34 (second alteration in original). The appellate court held that "the [Rule 32] court properly determined [Richter] had not established prejudice." *Id.* The appellate court further held that "[a]lthough Richter contends he was prejudiced by counsel's failure to seek a neuropsychological evaluation after the court rejected a guilty-except-insane defense the first time, he has not presented any evidence that such an exam would have resulted in evidence different from that before the court in the first instance." *Id.* Finally, the appellate court "note[d] that Richter's claim that his right to counsel was violated by the trial court's denial of his request for new counsel was precluded by his failure to raise it on appeal." *Id.* (citing Ariz. R. Crim. P. 32.1, 32.2(a)(3)). The appellate court went on to adopt the Rule 32 court's "ruling insofar as it pertains to Richter's claim that appellate counsel was ineffective in failing to raise the claim on appeal, which [it] properly rejected." Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision at 34 (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).

### 4.  PCR Petition for Review

On August 30, 2018, Petitioner sought review by the Arizona Supreme Court of his PCR petition. *See* Answer (Doc. 55), Petr.'s Pet. for Review from Denial of Rule 32 Pet. for PCR, *State v. Richter*, No. 2 CA CR 2018-0252-PR (Ariz. Sept. 30, 2018) (Exh. "HHH") (Doc. 55-2). Petitioner's sole issue for review was "whether the trial court erred in summarily denying Petitioner's Petition for Post-Conviction Relief without granting an evidentiary hearing." *Id.*, Exh. "HHH" at 39. In arguing that the trial court's summary denial was improper, Petitioner realleged that 1) trial counsel was ineffective for allegedly "abandoning" a Guilty Except Insane defense and failing to object to the *Torres* hearing,

thereby prejudicing Petitioner; 2) appellate counsel was ineffective for allegedly failing to argue that Petitioner had been denied his Sixth Amendment right to counsel due to the allegedly inadequate *Torres* hearing; and 3) the *Torres* hearing was inadequate.  *Id.*, Exh. "HHH" at 46–55.  On September 23, 2019, the Arizona State Supreme Court denied Petitioner's Petition for Review.  Answer (Doc. 55), *State v. Richter*, No. CR-19-0157-PR, Memorandum (Ariz. Sept. 23, 2019) (Exh. "III") (Doc. 55-2).

Accordingly, on December 2, 2019, the Arizona Court of Appeals issued its Mandate.  *See State v. Richter*, No. 2 CA-CR 2018-0252-PR, Mandate (Ariz. Ct. App. Dec. 2, 2019) (Exh. "JJJ") (Doc. 55-2).

### D.  The Instant Habeas Proceeding

On May 13, 2020, Petitioner filed his Petition for a Writ of Habeas Corpus and Application for Appointment of Counsel (Doc. 1).  On May 21, 2020, the Honorable Cindy K. Jorgenson granted Petitioner *in forma pauperis* status and appointed counsel.  Order 5/21/2020 (Doc. 7).  On June 15, 2020, she directed service of the Petition.  Order 6/15/2020 (Doc. 10).  Petitioner filed an unauthorized Amended Petition for Writ of Habeas Corpus (Doc. 16), and subsequently showed adequate cause to support the filing.  *See* Order 7/20/2020 (Doc. 19).  On August 26, 2020, Petitioner a Second Amended Petition for Writ of Habeas Corpus (Doc. 22).[8]  On September 28, 2021, undersigned held a status conference and directed Petitioner to file his Third Amended Petition on or before December 15, 2021.  Order 10/1/2021 (Doc. 45).  Ultimately, Petitioner filed his Third Amended Petition for Writ of Habeas Corpus (Doc. 50) that is now pending before the Court.

Petitioner raises nine (9) claims for relief, some with subparts.  *See* Third Amended Petition (Doc. 50).  First, Petitioner asserts that he was denied his Sixth Amendment right to the effective assistance of counsel.[9]  *See id.* at 26–55.  In Ground A1, Petitioner alleges

---

[8] This document is only titled "Amended Petition for Writ of Habeas Corpus"; however, review of the docket in CM/ECF indicates that it was Petitioner's Second Amended Petition.

[9] This is referred to as Ground or Claim "A," with a subpart designation where appropriate.

that trial counsel "fail[ed] to adequately investigate and pursue a GEI defense after the trial court disallowed it based solely on the evaluation of its own expert, Dr. Christiansen." *Id.* at 29.  In Ground A2, Petitioner alleges that "[t]rial counsel fell below the standard of care by failing to raise Mr. Richter's incompetence to stand trial." *Id.* at 39.  Petitioner notes that "[t]rial counsel was aware that Mr. Richter is severely mentally ill and, appropriately, raised his incompetence to stand trial at the onset of proceedings." *Id.*  Petitioner acknowledges that after an initial finding of incompetence, he was subsequently restored, but urges that he subsequently began to decompensate and trial counsel should have intervened.  Third Amended Petition (Doc. 50) at 39; *see also* Reply (Doc. 81) at 36.  In Ground A3, Petitioner asserts that trial counsel provided ineffective assistance when he allegedly "failed to request non-conflicted counsel to represent Mr. Richter at [the] hearing" conducted by the trial court to address Petitioner's request for new counsel, or otherwise failed to move to withdraw.  Third Amended Petition (Doc. 50) at 46.  In Ground A4, Petitioner alleges that "[t]rial counsel . . . failed to object to an unqualified expert opining about prejudicial evidence which was beyond his area of expertise[,] . . . [thereby] violat[ing] Mr. Richter's rights to the due process and effective assistance of counsel." *Id.* at 52 (citations omitted).

Next, Petitioner asserts ineffective assistance of counsel at sentencing.[10] *Id.* at 56–65.  In Ground B1, Petitioner alleges that counsel's performance was deficient because he called one witness, and his "presentation on behalf of Mr. Richter—both the testimony of Bob Richter and Skitzki's recommendation argument—lasted a mere ten transcript pages." *Id.* at 49–50 (citations omitted).  In Ground B2, Petitioner alleges that "[t]rial counsel should have known that Mr. Richter was intellectually disabled." *Id.* at 63.  Petitioner acknowledges that counsel's "one sentencing witness, Bob Richter, testified briefly regarding Mr. Richter's low IQ, difficulty in school, how he can barely read or write with any understanding, and that he was on 'mental disability' during the time period of the offense and the co-defendant was in charge of the government funds to support Mr.

---

[10] This is referred to as Ground or Claim "B," with a subpart designation where appropriate.

Richter"; however, Petitioner asserts that because counsel "inaccurately stated that Mr. Richter was 'borderline IQ,' minimizing his client's impairments" and  "conducted no investigation into Mr. Richter's adaptive deficits or intellectual disability prior to sentencing and presented no live intellectual disability expert witness to the trial court[,]" his assistance was ineffective.  Third Amended Petition (Doc. 50) at 64.

Third, Petitioner asserts that he was denied effective assistance of appellate counsel.[11]  *Id.* at 65–81.  In Ground C1, Petitioner argues that "[t]he *Anders* brief filed by Hopkins was profoundly deficient[,] [and] [i]t failed to raise *any* claim for relief, despite the existence of at least a half dozen non-frivolous claims." *Id.* at 67 (emphasis in original). Petitioner opines that appellate counsel should have raised claims related to 1) "the trial court's preclusion of the GEI defense"; 2) Petitioner's request for and the trial court's denial of a change of counsel prior to trial; 3) the trial court's denial of defense counsel's motion for a directed verdict and sufficiency of the evidence; 4) the trial court's denial of defense counsel's motion to sever trial; 5) the trial court's denial of defense counsel's motion for a mistrial based on the State's expert witness psychiatrist's vouching regarding the victim's credibility; and 6) the admission of the State's expert witness psychiatrist's testimony during which he reviewed photographs of the victims and identified scars and opined about their relative age and the type of implement that may have caused them.  *See id.* at 68–77.  In Ground C2, Petitioner asserts that "the *Anders* brief filed by Hopkins contained numerous errors and omissions and failed to present the strongest arguments in favor of Mr. Richter." *Id.* at 77–78 (quotations and citations omitted).  Petitioner further asserts that in light of the "myriad errors [sic] and omissions, the state court['s] conclu[sion] that appellate counsel fulfilled his obligations to the Defendant under *Anders*[,] . . . [wa]s contrary to what the Supreme Court has clearly established are appellate counsel's duties under *Strickland*, *Evitts*, and *Anders*[,]  . . . [and] constitute[d] an unreasonable determination of the facts."  Third Amended Petition (Doc. 50) at 79–80 (quotations and citations omitted).

---

[11] This is referred to as Ground or Claim "C," with a subpart designation where appropriate.

1    Fourth, Petitioner asserts that he "was prohibited from raising an affirmative GEI

2    defense." *Id.* at 81 (citations omitted).  In Ground D, Petitioner further asserts that "the

3    trial court's refusal to permit Mr. Richter to plead GEI implicated both his due process and

4    confrontation rights." *Id.* at 84.  Petitioner argues that "[h]is jury was never able to hear

5    the overwhelming evidence of his serious mental illnesses[,] . . . [and] [he] was unable to

6    effectively cross-examine his wife/co-defendant[.]" *Id.* (citations omitted).

7    In Ground E, Petitioner alleges that his due process rights were violated because he

8    "was deprived of his right to be competent at his trial." *Id.* at 86.  Next, in Ground F,

9    Petitioner alleges that he was deprived of his right to counsel when the trial court denied

10   his motion for new counsel prior to trial.  Third Amended Petition (Doc. 50) at 86–89.

11   Petitioner urges that the state courts' determinations that he had not met his burden to prove

12   an irreconcilable difference with trial counsel, and was therefore not entitled to new

13   counsel, were contrary to and an unreasonable application of Supreme Court precedent and

14   "based on an unreasonable determination of the facts." *Id.* at 88–89.

15   In Ground G, Petitioner alleges that "[t]he trial court violated [his] federal due

16   process and fair trial rights when it repeatedly denied Mr. Richter's requests to sever his

17   trial from Sophia's[.]" *Id.* at 89.  Petitioner opines that his "conviction and sentence are

18   unconstitutional in light of the denial of his request for severance." *Id.* at 90.  In Ground

19   H, Petitioner asserts that "[t]he trial court violated [his] federal due process rights when it

20   permitted the prosecution to introduce victim mental health evidence that did not prove an

21   element of the offence, vouch for the credibility of their key witnesses, and introduce

22   unqualified expert testimony, relieving the prosecution of its burden of proof beyond a

23   reasonable doubt." *Id.* at 91 (citations omitted).  In Ground H1, Petitioner asserts that the

24   State's expert witness psychiatrist "testified that the victims' suffered from PTSD[12] and

25   other mental health issues due to Mr. Richter's acts."  Third Amended Petition (Doc. 50)

26   at 92.  Petitioner opines that this testimony was improper because it "was not required to

27   prove any element of the charges, but used to capitalize on the jury's sympathy for the

28

---

[12] Post-traumatic stress disorder.

already sympathetic victims." *Id.* In Ground H2, Petitioner asserts that the State's psychiatrist "improperly vouched for the truthfulness of the victims[.]" *Id.* In Ground H3, Petitioner urges a due process violation because the State's psychiatrist was allegedly "allowed . . . to testify beyond the scope of his expertise." *Id.*

Finally, Petitioner asserts that after a 2017 prison assault he is "unable to form a rational understanding of what he was convicted of and why he is in prison."[13] *Id.* at 93. Petitioner further asserts that his continued incarceration under these circumstance violates the Eighth Amendment. Third Amended Petition (Doc. 50) at 93–116. Petitioner bases Ground I on two (2) primary arguments: 1) "incarcerating a defendant who is unable to form a rational understanding of why he is being punished constitutes cruel and unusual punishment"; and 2) "because of his profound cognitive impairments, continuing to incarcerate Mr. Richter serves no legitimate penological purpose, rendering that punishment disproportionate under the Eighth Amendment." *Id.* at 106–107.

On July 5, 2022, Respondents filed their Answer to Petition for Writ of Habeas Corpus (Doc. 55) and Petitioner replied (Doc. 81).

## II.   STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[13] This is referred to as Ground or Claim "I."

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Richter's original petition, and the Court has independently reviewed the records and finds that his original petition (Doc. 1) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).  Respondents do dispute the timeliness of Ground I in Richter's Third Amended Petition (Doc. 50), because it fails to relate back to the original petition.  Answer (Doc. 55) at 113–18.  The Court finds that Richter's Third Amended Petition (Doc. 50) is timely to the extent that it relates back to the original petition, but will address the timeliness of Ground I in Section IV.C., *infra*.

## III.   STANDARD OF REVIEW

### A.   *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

1
2

unreasonable determination of the facts in light of the evidence presented in
the State court proceeding.

3   28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Correcting

4   errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*,

5   502 U.S. 62, 67 (1991). Ultimately, "[t]he statute's design is to 'further the principles of

6   comity, finality, and federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007)

7   (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). Furthermore, this standard is

8   difficult to meet and highly deferential "for evaluating state-court rulings, [and] . . .

9   demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S.

10   at 181 (citations and internal quotation marks omitted).

11        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat.

12   1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. The

13   "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims

14   have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Federal

15   courts reviewing a petition for habeas corpus must "presume the correctness of state courts'

16   factual findings unless applicants rebut this presumption with 'clear and convincing

17   evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing 28 U.S.C. §

18   2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the

19   state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473;

20   *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is

21   unreasonable where a state court properly identifies the governing legal principles

22   delineated by the Supreme Court, but when the court applies the principles to the facts

23   before it, arrives at a different result. *See Harrington v. Richter*, 562 U.S. 86, (2011);

24   *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th

25   Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the

26   claim being presented in federal court was so lacking in justification that there was an error

27   . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S. Ct. at 10 (quoting

28   *Harrington*, 562 U.S. at 103) (alterations in original).

### B. Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518 (internal citations omitted). This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

Section 2254(c) provides that claims "shall be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275 (1971). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and finding the justices' opportunity to read a lower court decision addressing the federal claims insufficient to support fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state

court because petitioner presented claim in state court only on state grounds).  Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court."  *Baldwin*, 541 U.S. at 29.   "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 962 P.2d 205 (Ariz. 1998).  Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350 (1989).

### C.   *Procedural Default*

#### 1.  **In General**

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law.   In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted).   Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default.  *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner

failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). "Together, exhaustion and procedural default promote federal-state comity." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).

Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1 (citations omitted). In this circumstance, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quotations and citations omitted) (emphasis in original). Second, where the petitioner presented his claims to the state court, which denied relief based "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 728. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, [because] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial or on appeal or in any previous collateral proceeding[.]" Ariz. R. Crim. P. 32.2(a)(3) (2022). If an asserted claim "raises a violation of a constitutional right that can only be waived knowingly, voluntarily and personally by the defendant[,]" such claim is not automatically precluded. *Id.* Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *see also Stewart v. Smith*,

46 P.3d 1067 (Ariz. 2002).   The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## 2.  Overcoming a Procedural Bar

Where a habeas petitioner's claims have been procedurally defaulted, a petitioner must show cause and actual prejudice to overcome the bar on federal review. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial.").   "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").   Actual prejudice requires a habeas petitioner to "show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis in original) (internal quotations omitted).   Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.* at 494–96.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).   "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim

with a colorable showing of factual innocence.'" *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. Further, to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

### D.    *Evidentiary Development*

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Similarly, § 2254(d)(2) contemplates whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Pinholster*, 563 U.S. at 183 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citing with approval the Ninth Circuit's recognition that "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record" (internal quotation marks omitted)).

Section 2254(e)(2) provides the standard for evidentiary hearings to develop the factual record in the federal court. It provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall **not** hold an evidentiary hearing on the claim **unless** the applicant shows that –
>
> (A)    the claim relies on –
>
> > (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or
> >
> > (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; **and**

1
2
3

(B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

4   28 U.S.C. § 2254(e)(2) (emphasis added).  "[U]nder § 2254(e)(2), a federal habeas court

5   may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-

6   court record based on ineffective assistance of postconviction counsel." *Shinn v. Ramirez*,

7   596 U.S. 366 (2022).  Moreover, in any circumstance, "even if all of these requirements

8   are satisfied, a federal habeas court still is not *required* to hold a hearing or take any

9   evidence." *Ramirez*, 596 U.S. at 382 (emphasis in original).

10

11   **IV.   ANALYSIS**

12        Petitioner's claims fall into one of three (3) categories: 1) procedurally defaulted; 2)

13   reviewable on the merits; and 3) untimely or otherwise non-cognizable.  The Court will

14   address each category of claims in turn.

15        ***A.  Procedurally Defaulted Claims***

16        Petitioner makes much of "the State [having] affirmatively waived preclusion as to

17   Mr. Richter's claims that counsel was ineffective for failing to adequately pursue the GEI

18   defense (Claim A(1)), that Mr. Richter received ineffective assistance of counsel at

19   sentencing (Claim B), and that he received ineffective assistance of counsel on appeal

20   (Claim C)" in response to Petitioner's recently filed Petition for Post-Conviction Relief in

21   the Arizona courts.  Petr.'s Reply (Doc. 81) at 15.  Petitioner again asserts that "[g]iven the

22   State's waiver, Respondent's argument that Claim B and part of Claim C are procedurally

23   defaulted is moot." *Id.* at 15–16.  As the District Judge has already explained, "[T]he Court

24   rejects the Petitioner's assertion that [because] the State agrees to waive preclusion under

25   Rule 32.2 as to the GEI related claims, . . . this Court should also waive it.  This is not the

26   relevant analysis in this Court."  Order 9/12/2023 (Doc. 75) at 7.  The District Judge

27   reiterated the irrelevance of the State's position in the current Arizona court proceeding by

28   stating:

1
2
3
4
5

> Resolution of the independent proceedings in the state court does not bear upon **this case, which will be decided pursuant to federal habeas law that requires application of state procedural rules, including Rule 32.2. It does not matter whether the State agrees to waive the preclusive effect of Rule 32.2.** This Court's resolution on the merits of the Petition is unaffected by any relief granted in the state courts, except to the extent Petitioner's release may moot this proceeding.

6

Order 9/12/2023 (Doc. 75) at 9 (emphasis added).

7
8
9
10
11
12
13
14
15
16

"Together, exhaustion and procedural default promote federal-state comity." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022). "Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, . . . and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules." *Id.* at 378–379 (quotations and citations omitted). "[T]o allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule." *Id.* at 378 (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). "Thus, federal courts **must** apply an important 'corollary' to the exhaustion requirement: the doctrine of procedural default." *Id.* (emphasis added) (quotations and citations omitted).

17
18
19
20
21
22
23
24
25
26
27
28

The Court finds Grounds A2, A3, A4, B1, B2, C1, D, E, G, H1, H2, and H3 of Petitioner's Third Amended Petition (Doc. 50) procedurally defaulted without excuse. These claims, which include allegations of ineffective assistance of trial counsel (including during sentencing); ineffective assistance of appellate counsel; due process violations arising from the trial court's denial of a GEI defense, an alleged deprivation of his right to be competent at trial, the trial court's denial of Petitioner's requests to sever his trial from that of his co-defendant, and alleged issues regarding the State's expert witness psychiatrist, were not raised. *See* Third Amended Petition (Doc. 50). "[P]etitioner failed to exhaust state remedies [for each claim listed above,] and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1 (citations omitted). The Court will address each claim, in turn.

- 24 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1. **Ineffective Assistance of Counsel**

Grounds A2, A3, A4, B1, and B2 relate to allegations regarding counsel's ineffectiveness at trial and during sentencing. Ground C1 relates to appellate counsel's alleged ineffectiveness.

### a. **Legal Standards**

The Supreme Court has elucidated a two-part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that counsel's performance was deficient. *Id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Petitioner must show that this performance prejudiced his defense. *Id.* Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *see also State v. Carver*, 771 P.2d 1382 (Ariz. 1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims). The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial. *Strickland*, 466 U.S. at 689. "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, 563 U.S. 170 (2011) (quoting *Strickland*, 466 U.S. at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington v. Richter*, 562 U.S. 86 (2011) (citations omitted). Judging counsel's performance must be made without the influence of hindsight. *See Strickland*, 466 U.S. at 689. As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim.  *Strickland*, 466 U.S. at 700.  "[T]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105) (alterations in original).

"The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).  Accordingly, "[w]e apply the doubly deferential standard to review the state court's 'last reasoned decision.'"  *Vega v. Ryan*, 757 F.3d 960, 966 (9th Cir. 2014) (citations omitted).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in 2254(d)(1) and (d)(2)."  *Harrington*, 131 U.S. at 98, 131 S. Ct. at 784.  As such, Petitioner also bears the burden of showing that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 698–99 (2002); *see also*  28 U.S.C. § 2254(d).

### b.  Ground A2: Failure to raise Petitioner's right to be competent

Petitioner alleges that trial counsel was ineffective for an alleged "fail[ure] to raise Mr. Richter's incompetence to stand trial."  Third Amended Petition (Doc. 50) at 39.  Petitioner notes that "[t]rial counsel was aware that Mr. Richter is severely mentally ill and, appropriately, raised his incompetence to stand trial at the onset of proceedings."  *Id.*  Petitioner acknowledges that after an initial finding of incompetence, he was subsequently restored, but urges that he subsequently began to decompensate and trial counsel should have intervened.  Third Amended Petition (Doc. 50) at 39; *see also* Reply (Doc. 81) at 36.

### i.  *Fair Presentation*

As noted in Section III.B., *supra*, the fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition.

*Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004). "[A] petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)). In other words, "a petitioner must properly raise [a claim] on every level of direct review." *Id.* (citing *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992)); *see also Baldwin*, 541 U.S. at 29 (fair presentation requires a prisoner to raise his claims "in each appropriate state court").

Petitioner did not raise his ineffective assistance of trial counsel for an alleged failure to raise Mr. Richter's incompetence to stand trial based on alleged decompensation in his PCR petition to the Rule 32 court. *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). Furthermore, Petitioner did not raise this claim to the Arizona Court of Appeals on review of his PCR petition. *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2). As such, Petitioner did not fairly present his claim to the state court. "As a general matter, each 'unrelated alleged instance [ ] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)) (alterations in original). This means "all operative facts to an ineffective assistance claim must be presented to the state courts in order for a petitioner to exhaust his remedies." *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007). This is "[b]ecause ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]" *Id.* As such, "a petitioner who presented any ineffective assistance of counsel claim below can[not] later add unrelated instances of counsel's ineffectiveness to that claim." *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other

claims of ineffective assistance based on different facts").

Furthermore, "when a defendant raises an IAC claim in a successive petition and has already raised a different IAC claim in an earlier petition, preclusion is required and courts need not determine whether the claim alleges a violation requiring personal waiver." *State v. Traverso*, 537 P.3d 345 (Ariz. Ct. App. 2023) (citing *Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002) (en banc)); *see also* Ariz. R. Crim. P. 32.2(a)(3). Therefore, Petitioner's claim is procedurally defaulted and unavailable for review unless he can show cause and prejudice for the default.

### ii. *No Cause and Prejudice to Excuse Default*

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner relies on *Martinez v. Ryan*[14] to excuse any procedural default of this claim.

"In *Martinez* . . . and *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), [the Supreme] Court announced a narrow exception to *Coleman*'s[15] general rule." *Davila v. Davis*, — U.S. —, 137 S. Ct. 2058, 2062 (2017). "That exception treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Id.* at 2062–63. The Supreme Court observed that "[t]hese rules [under which a prisoner may establish cause to excuse a procedural default] reflect an equitable judgment that only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Martinez*, 566 U.S. at 13, 132 S.

---

[14] 566 U.S. 1 (2012).

[15] *Coleman v. Thompson*, 501 U.S. 722 (1991).

Ct. at 1318 (citations omitted).  "In applying this standard, *Martinez* made clear that a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, *and* whether there is prejudice." *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (citing *Martinez*, 132 S. Ct. at 1321).  Additionally, this Court's "review of counsel's performance is highly deferential." *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  The Court "will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Id.*

Petitioner acknowledges that trial counsel initially raised Mr. Richter's incompetence early in the case, the trial court found Mr. Richter to be incompetent and ordered him restored, which then occurred.  Third Amended Petition (Doc. 50) at 39. Without citation to the record, Petitioner asserts that "[r]ecord evidence suggests that Mr. Richter's mental health continued to decline, even on medication, and he was once again incompetent to understand the proceedings against him or assist in his defense." *Id.* Petitioner asserts that during the hearing on his request for new counsel, trial counsel failed to "recogniz[e] Mr. Richter's inability to understand the proceedings against him as a function of his deteriorating mental health and competence." *Id.* at 40.  Petitioner further asserts that "[t]hree months later, on the third day of trial, Mr. Richter's medications were so impairing his motor functioning that he indicated he was 'having trouble speaking through [his] medication[.]"[16] *Id.* (citations omitted).

On September 21, 2015, the trial court addressed Mr. Richter's letters seeking new counsel.  *See* Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Pima Cnty. Super. Ct. Sept. 21, 2015) (Exh. "OOO") (Doc. 55-2).  The trial court asked Mr.

---

[16] As an initial matter, this exchange took place on the fourth day of trial.  Petitioner cited to "RT 12/11/15 at 3-5."  On habeas, the Court does not receive a full copy of the state court record, which renders such citations unhelpful, particularly when, as here, the date is incorrect and Petitioner fails to attach a copy to his pleading.  The correct transcript, Trial Tr. 11/13/2015 (Trial – Day 4), can be found at Exhibit "SSS" (Doc. 55-2) of Respondent's Answer (Doc. 55).

Richter to "identify some issues that are out there as to why [he] think[s] that [he] should have a new lawyer?"  *Id.*, Exh. "OOO" at 5:8–10.[17]  Mr. Richter referred the trial court to the information contained in his letters.  *Id.*, Exh. "OOO" at 5:11–19.   Trial counsel acknowledged that the letters indicated Petitioner's dissatisfaction, but could not represent whether the dissatisfaction "r[o]se to some sort of conflict that would make [trial counsel] unable to represent [Petitioner.]"  *Id.*, Exh. "OOO" at 6:2–10, 14–16.  At the trial court's behest, trial counsel addressed various points raised in the letters.  *Id.*, Exh. "OOO" at 6:17–25, 8:11–16, 9:21–10:19.  The trial court also questioned Mr. Richter regarding the letters, whether he received assistance writing them, what type of assistance was received, and if there was anything else he wanted the court to know.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. at 4:20–5:19, 7:1–8:9, 10:20–24 (Pima Cnty. Super. Ct. Sept. 21, 2015) (Exh. "OOO") (Doc. 55-2).  Nothing in either trial counsel or the trial court's interactions with Petitioner appeared to raise any concerns regarding his competence.  *See Williams v. Woodford*, 384 F.3d 567, 604 (9th Cir. 2004) ("Although no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's demeanor before the trial judge, irrational behavior of the defendant, and available medical evaluations of the defendant's competence to stand trial.").

On November 13, 2015, the fourth day of trial, trial counsel raised the issue of Petitioner's new medications.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Trial – Day 4) at 3:3–14. (Pima Cnty. Super. Ct. Nov. 13, 2015) (Exh. "SSS") (Doc. 55-2).   The following exchange took place between the trial court and defense counsel:

> THE COURT:        Good morning.  Show we're back on the record.  Show the presence of counsel and the parties previously indicated.
>
> All right.   A couple of items I understand we need to make a record of?

---

[17] The Court cites page and line designations within a transcript to the original page number, rather than the CM/ECF page number.

1           MR. SKITZKI:     Yes, Your Honor.  It's my understanding that my

2 client has been placed on some new mental health medication that's had

3 some effect, negative effect on him, on his motor skills.

4                                         I believe that mentally and for purposes of his

5 acuity, I don't believe that there's been any change negatively.

6           THE COURT:     In other words, it's not an impairment on his

7 ability to assist you in terms of this trial.

8           MR. SKITZKI:     That is correct, Your Honor.

9           THE COURT:     And can I get a consent on that from your client

10 to make sure of that?

11           MR. SKITZKI:     You certainly may ask him, Judge.

12 *Id.*, Exh. "SSS" at 3:3–22.  The trial court went on to discuss the medication change with

13 Mr. Richter.  *See id.*, Exh. "SSS" at 3:23–5:21.  Regarding the medication's impact on

14 Petitioner, the following exchange occurred:

15           THE COURT:         So, Mr. Richter, I understand that your

16 meds were changed down at the Pima County Adult Detention Center; is that

17 correct?

18           THE DEFENDANT:     Yes.

19           THE COURT:         Can you just, for the record, share with us

20 in what respect that your meds were changed?

21           THE DEFENDANT:     I'm not sure.

22           THE COURT:         Well, how do you know they were

23 changed then?

24           THE DEFENDANT:     Oh, no, they were.  I'm having trouble

25 speaking through my medication right now.

26           THE COURT:         Okay.  But what meds – so – if you can't

27 recall the meds that – what meds were you taking previously, I suppose?  Do

28 you remember?

1    MR. RICHTER:          Yeah, on Theraquil.

2    THE COURT:            And?

3    MR. RICHTER:          And Buspar.

4    THE COURT:            And –

5    MR. RICHTER:          And – the new medication is Buspar.

6    THE COURT:            Oh, okay.   And is it a prescribed

7    medication by the health care professionals at the Adult Detention Center.

8    THE DEFENDANT:        Yeah.

9    THE COURT:            And what's – since I'm not familiar with

10   that medication, can you share with me what it's supposed to do or designed

11   to do?

12   THE DEFENDANT:        I don't know.

13   THE COURT:            Well, obviously the doctor must have

14   thought it was necessary.  Does it help you sleep or something or what?

15   THE DEFENDANT:        Yeah.

16   THE COURT:            Okay.  All right.  But at this juncture, are

17   you okay in terms of your ability to sit through the trial?

18   THE DEFENDANT:        Yeah.

19   THE COURT:            And you can help your lawyer and assist

20   him in terms of defending yourself?

21   THE DEFENDANT:        Yes.

22   *Id.*, Exh. "SSS" at 3:23–5:14.  Nothing in this exchange appeared to raise any concerns

23   regarding his competence.  *See Williams v. Woodford*, 384 F.3d 567, 604 (9th Cir. 2004)

24   ("Although no particular facts signal a defendant's incompetence, suggestive evidence

25   includes the defendant's demeanor before the trial judge, irrational behavior of the

26   defendant, and available medical evaluations of the defendant's competence to stand

27   trial.").  Furthermore, "a defendant's counsel is in the best position to evaluate a client's

28   comprehension of the proceedings."  *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991)

1 (citations omitted).  Here, counsel reported that his client was still able to assist with trial.

2 Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Trial – Day 4) at 3:3–

3 14. (Pima Cnty. Super. Ct. Nov. 13, 2015) (Exh. "SSS") (Doc. 55-2).  "[T]he fact that the

4 trial judge, government counsel, and [Petitioner's] own attorney did not perceive a

5 reasonable cause to believe [Petitioner] was incompetent" cuts against Petitioner's claims

6 on habeas.  *Hernandez*, 930 F.2d at 718.  "The trial transcript does not indicate that

7 [Petitioner] lacked understanding of the proceedings or was unable to assist in his defense."

8 *Williams*, 384 F.3d at 607.

9        "In order to show ineffectiveness of PCR counsel, [Petitioner] must show that PCR

10 counsel's failure to raise the claim that trial counsel was ineffective was an error 'so serious

11 that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

12 Amendment,' and caused [Petitioner] prejudice."  *Sexton v. Cozner*, 679 F.3d 1150, 1157

13 (9th Cir. 2012) (citing *Strickland*, 466 U.S. at 687).  In arguing that PCR counsel was

14 ineffective, Petitioner observes "much of the evidence of Mr. Richter's deteriorating

15 mental health at trial overlapped with the evidence initial PCR counsel used to raise the

16 IAC/GEI claim . . . and right to counsel claim[.]"  Petr.'s Reply (Doc. 81) at 51 (citations

17 omitted).  This fact undermines Petitioner's argument.  PCR counsel reviewed the entirety

18 of the record and made a choice not to include what appears to be a meritless claim.  *See*

19 *Murray v. Schriro*, 745 F.3d 984, 1011 (9th Cir. 2014) ("[T]he relevant inquiry . . . is not

20 what defense counsel could have pursued, but rather whether the choices made by defense

21 counsel were reasonable.").

22        Petitioner has failed "to show 'that [either trial or PCR] counsel made errors so

23 serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

24 Sixth Amendment.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*,

25 466 U.S. at 689).  As such, *Martinez* will not excuse his procedural default.  *See Sexton*,

26 679 F.3d at 1159–61.  Review of the record confirms that Petitioner has not met his burden

27 to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986)

28 (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but

that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  Accordingly, Petitioner's claim is procedurally defaulted and precluded from habeas review.

### c.  Ground A3: Failure to move for non-conflicted counsel or withdraw

Petitioner asserts that trial counsel provided ineffective assistance when he allegedly "failed to request non-conflicted counsel to represent Mr. Richter at [the] hearing" conducted by the trial court to address Petitioner's request for new counsel, or otherwise failed to move to withdraw.  Third Amended Petition (Doc. 50) at 46.

#### i.  Fair Presentation

As discussed in Sections III.B. and IV.A.1.b.i., *supra*, the fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition.  *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004).  Petitioner did not raise his ineffective assistance of trial counsel for an alleged failure to request non-conflicted counsel, or otherwise move to withdraw in his PCR petition to the Rule 32 court. *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2).  Neither did Petitioner raise this claim to the Arizona Court of Appeals on review of his PCR petition.  *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).  As such, Petitioner did not fairly present his claim to the state court.  As noted in Section IV.A.1.b.i., *supra*, "ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication

1    of the facts relating to it[.]"  *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007).

2    As such, "a petitioner who presented any ineffective assistance of counsel claim below

3    can[not] later add unrelated instances of counsel's ineffectiveness to that claim."  *Id.*

4    (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736,

5    788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel

6    based on one set of facts, does not exhaust other claims of ineffective assistance based on

7    different facts").  Furthermore, "when a defendant raises an IAC claim in a successive

8    petition and has already raised a different IAC claim in an earlier petition, **preclusion is**

9    **required** and courts need not determine whether the claim alleges a violation requiring

10   personal waiver."  *State v. Traverso*, 537 P.3d 345 (Ariz. Ct. App. 2023) (emphasis added)

11   (citing *Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002) (en banc)); *see also* Ariz. R. Crim. P.

12   32.2(a)(3).  Therefore, Petitioner's claim is procedurally defaulted and unavailable for

13   review unless he can show cause and prejudice for the default.

14                    ***ii.  No Cause and Prejudice to Excuse Default***

15          Where a habeas petitioner's claims have been procedurally defaulted, the federal

16   courts are prohibited from subsequent review unless the petitioner can show cause and

17   actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure

18   to raise claims in state appellate proceeding barred federal habeas review unless petitioner

19   demonstrated cause and prejudice).  Petitioner relies on *Martinez v. Ryan*[18] to excuse any

20   procedural default of this claim.

21          As discussed in Section IV.A.1.b.ii., *supra*, Petitioner's letters requesting new

22   counsel were addressed by the trial court.  Upon request by the trial court, defense counsel

23   responded to various issues raised in Petitioner's letters.  Answer (Doc. 55), *State v.*

24   *Richter*, No. CR20135144-001, Hr'g Tr. at 6:17–25, 8:11–16, 9:21–10:19 (Pima Cnty.

25   Super. Ct. Sept. 21, 2015) (Exh. "OOO") (Doc. 55-2).  The trial court also questioned Mr.

26   Richter regarding the same.  *Id.*, Exh. "OOO" at 4:20–5:19, 7:1–8:9, 10:20–24.

27   Furthermore, Petitioner's presumption that the trial court would have granted defense

28   _____

        [18] 566 U.S. 1 (2012).

counsel's motion to withdraw is unsupported.  *See State v. Gomez*, 293 P.3d 495, 500–501 (Ariz. 2012) (en banc) (upholding trial court's denial of counsel's motion to withdraw and defendant's motion for change of counsel based on an insufficient showing "that a change of counsel [wa]s necessary, especially considering the age of the case and the timing of the motion[.]")   The Court finds that trial counsel's actions were reasonable, as was PCR counsel's decision not to raise this issue in the Rule 32 proceeding.

Petitioner has failed "to show 'that [either trial or PCR] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).  As such, *Martinez* will not excuse his procedural default.  *See Sexton v. Cozner*, 679 F.3d 1150, 1159–61 (9th Cir. 2012).   Review of the record confirms that Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").   Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."   28 U.S.C. § 2254(e)(2)(B).   Accordingly, Petitioner's claim is procedurally defaulted and precluded from habeas review.

### d.  Ground A4: Failure to object to State's expert witness

Petitioner asserts that trial counsel provided ineffective assistance when he allegedly "failed to object to an unqualified expert opining about prejudicial evidence which was beyond his area of expertise[,] . . . [thereby] violat[ing] Mr. Richter's rights to the due process and effective assistance of counsel."   Third Amended Petition (Doc. 50) at 52 (citations omitted).

1

### i. *Fair Presentation*

2      As discussed in Sections III.B. and IV.A.1.b.i., *supra*, the fair presentation

3  requirement mandates that a state prisoner must alert the state court "to the presence of a

4  federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004). Petitioner did

5  not raise his ineffective assistance of trial counsel for an alleged failure to object to an

6  allegedly unqualified expert's testimony in his PCR petition to the Rule 32 court. *See*

7  Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima

8  Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). Furthermore, Petitioner did not

9  raise this claim to the Arizona Court of Appeals on review of his PCR petition. *See* Answer

10  (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App.

11  Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2). As such, Petitioner did not fairly present his

12  claim to the state court. As noted in Section IV.A.1.b.i., *supra*, "ineffective assistance

13  claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline

14  explication of the facts relating to it[.]" *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th

15  Cir. 2007). As such, "a petitioner who presented any ineffective assistance of counsel

16  claim below can[not] later add unrelated instances of counsel's ineffectiveness to that

17  claim." *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619

18  F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective

19  assistance of counsel based on one set of facts, does not exhaust other claims of ineffective

20  assistance based on different facts"). Furthermore, "when a defendant raises an IAC claim

21  in a successive petition and has already raised a different IAC claim in an earlier petition,

22  **preclusion is required** and courts need not determine whether the claim alleges a violation

23  requiring personal waiver." *State v. Traverso*, 537 P.3d 345 (Ariz. Ct. App. 2023)

24  (emphasis added) (citing *Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002) (en banc)); *see also*

25  Ariz. R. Crim. P. 32.2(a)(3). Therefore, Petitioner's claim is procedurally defaulted and

26  unavailable for review unless he can show cause and prejudice for the default.

27

### ii. *No Cause and Prejudice to Excuse Default*

28      Where a habeas petitioner's claims have been procedurally defaulted, the federal

- 37 -

1   courts are prohibited from subsequent review unless the petitioner can show cause and

2   actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure

3   to raise claims in state appellate proceeding barred federal habeas review unless petitioner

4   demonstrated cause and prejudice). Petitioner relies on *Martinez v. Ryan*[19] to excuse any

5   procedural default of this claim.

6         This claim is devoid of merit. Prior to trial, defense counsel filed a motion *in limine*

7   seeking to preclude "[a]ny testimony from Dr. John Leipsic wherein he opines about the

8   future prognosis for any of the three alleged victims[,] [and] [i]n addition, any testimony

9   wherein he opines about any of the following: child abuse; posttraumatic stress disorder;

10  entrapment; captor binding; [and] trauma." *See* Answer (Doc. 50), Def.'s Mot. *in Limine*,

11  *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Nov. 4, 2015). Counsel also

12  opposed the State's Motion *in Limine* re: Dr. Leipsic's testimony. *See* Answer (Doc. 50),

13  *State v. Richter*, No. CR20135144-001, Minute Entry at 102 (Pima Cnty. Super. Ct. Nov.

14  13, 2015). Following argument, the trial court granted the State's motion and denied

15  Petitioner's. *Id.* The breadth of testimony defense counsel sought to preclude pre-trial

16  encompasses that which Petitioner now argues counsel should have objected to during trial.

17  The Court finds that trial counsel's actions were reasonable, as was PCR counsel's decision

18  not to raise this issue in the Rule 32 proceeding.

19        Petitioner has failed "to show 'that [either trial or PCR] counsel made errors so

20  serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

21  Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*,

22  466 U.S. at 689). As such, *Martinez* will not excuse his procedural default. *See Sexton v.

23  Cozner*, 679 F.3d 1150, 1159–61 (9th Cir. 2012). Review of the record confirms that

24  Petitioner has not met his burden to show either cause or actual prejudice. *Murray v.

25  Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . .

26  created a *possibility* of prejudice, but that they worked to his *actual* and substantial

27  disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis

28

      [19] 566 U.S. 1 (2012).

- 38 -

in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Accordingly, Petitioner's claim is procedurally defaulted and precluded from habeas review.

### e. Ground B1: Presentation of mitigation evidence at sentencing

Petitioner alleges that counsel's performance was deficient because he called one witness, and his "presentation on behalf of Mr. Richter—both the testimony of Bob Richter and Skitzki's recommendation argument—lasted a mere ten transcript pages." Third Amended Petition (Doc. 50) at 49–50 (citations omitted). Petitioner expands on this claim to note that trial counsel's presentation at sentencing omitted evidence regarding "Mr. Richter's incredibly traumatic life history, severe mental illness, history of head injuries, and intellectual disability." Petr.'s Reply (Doc. 81) at 62.

### i. *Fair Presentation*

As discussed in Sections III.B. and IV.A.1.b.i., *supra*, the fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004). Petitioner did not raise his ineffective assistance of sentencing counsel for an alleged failure to call more than one witness or any claim regarding an alleged failure to investigate Petitioner's history in his PCR petition to the Rule 32 court. *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). Furthermore, Petitioner did not raise this claim to the Arizona Court of Appeals on review of his PCR petition. *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2). As such, Petitioner did not fairly present his claim to the state court. As noted in Section IV.A.1.b.i., *supra*, "ineffective assistance claims are not fungible, but are instead

1   highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]"
2   *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007).  As such, "a petitioner who
3   presented any ineffective assistance of counsel claim below can[not] later add unrelated
4   instances of counsel's ineffectiveness to that claim."  *Id.* (citations and internal quotations
5   omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's
6   assertion of a claim of ineffective assistance of counsel based on one set of facts, does not
7   exhaust other claims of ineffective assistance based on different facts").  Furthermore, "[a]s
8   a general rule, when ineffective assistance of counsel claims are raised, or could have been
9   raised *in a Rule 32 post-conviction relief proceeding*, subsequent claims of ineffective
10  assistance will be deemed waived and precluded."  *State v. Bennett*, 146 P.3d 63, 67 (Ariz.
11  2006) (emphasis in original) (quotations and citations omitted); *see also* Ariz. R. Crim. P.
12  32.2(a)(3).   Therefore, Petitioner's claim is procedurally defaulted and unavailable for
13  review unless he can show cause and prejudice for the default.

14                    ***ii.***   ***No Cause and Prejudice to Excuse Default***

15          Where a habeas petitioner's claims have been procedurally defaulted, the federal
16  courts are prohibited from subsequent review unless the petitioner can show cause and
17  actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure
18  to raise claims in state appellate proceeding barred federal habeas review unless petitioner
19  demonstrated cause and prejudice).  Petitioner relies on *Martinez v. Ryan*[20] to excuse any
20  procedural default of this claim.

21          Petitioner's contention that sentencing counsel failed to perform any investigation
22  regarding "Mr. Richter's incredibly traumatic life history, severe mental illness, history of
23  head injuries, and intellectual disability" is unsupported by the record.  Sentencing counsel
24  obtained a mitigation specialist whose report was submitted to the trial court prior to
25  sentencing.  *See* Answer (Doc. 55), Mitigation Rpt. for Fernando Richter, *State v. Richter*,
26  No. CR20135144-001 (Pima Cnty. Super. Ct. Feb. 23, 2016) (Exh. "PP") (Doc. 55-1).  The
27  mitigation specialist provided the court with information regarding Petitioner's birth; his

28  _____
            [20] 566 U.S. 1 (2012).

mother's status as a single parent and subsequent marriage to Petitioner's step-father; Petitioner's immigration to the United States as a child; his difficult childhood; the loss of one of his siblings to suicide; Petitioner being run over by a car at the age of nine and a half; the resulting head injuries; Petitioner's "high order cognitive deficits"; his mental health issues; Petitioner's frontal lobe damage; his education and attendant difficulties, including an Individualized Education Program ("IEP") for emotional instability; Petitioner's employment history; and his restoration report.  *See id.*, Exh. "PP."

Defense counsel also submitted a sentencing memorandum.  *See* Answer (Doc. 55), Sentencing Memo., *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Mar. 3, 2016) (Exh. "QQ") (Doc. 55-1).  Counsel discussed Petitioner's "traumatic upbringing," including not knowing his biological father, how his biological father abused physically his mother, even while she was pregnant; Petitioner's cognitive difficulties, including special education in school and his tenuous reading ability which persists to the present; and Petitioner being run over by a car at the age of nine (9), resulting in severe head injuries. *Id.*, Exh. "QQ" at 172–73.  Counsel also noted Petitioner's inability to maintain employment and eventual receipt of social security disability benefits.  *Id.*, Exh. "QQ" at 173.  Counsel reviewed Petitioner's mental illnesses which exists "[i]n addition to his cognitive impairment[.]"  *Id.*, Exh. "QQ" at 173–74.  Counsel described the worsening of Petitioner's schizophrenia and the negative impacts of the disease which "eventually resulted in the circumstances and situation which led to his conviction."  *Id.*  Counsel indicated that "[t]he specifics of Fernando's conditions and his history have been more specifically set forth in the prior submissions to this Court."  Answer (Doc. 55), Sentencing Memo. at 174, *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Mar. 3, 2016) (Exh. "QQ") (Doc. 55-1).  Counsel emphasized Petitioner was not an "evil monster" but rather a victim of his disease, "which ultimately led to the offenses for which he now stands to be punished."  *Id.*

On February 17, 2016, defense counsel filed sentencing mitigation documents, including the Rule 11 Evaluation by Michael Christiansen, Ph.D., the Restoration to

Competency Program Report by Serena Gorgueiro, Psy.D., the Rule 11 Evaluation by Bradley Johnson, M.D., and the Psychological Evaluation by Paul Simpson, Ed.D. *See* Answer (Doc. 55), Not. of Filing of Def.'s Sentencing Mitigation Docs., *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Feb. 17, 2016) (Exh. "RR") (Doc. 55-1). On February 10, 2016, defense counsel filed sentencing mitigation documents consisting of letters from family members, including Jean Richter (sister), Grace Soto (sister), Raphael Richter (brother), Robert Richter (step-father), and Maria Cruz Alvarez Richter (mother). *See* Answer (Doc. 55), Not. of Filing Def.'s Sentencing Mitigation Docs., *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Feb. 10, 2016) (Exh. "SS") (Doc. 55-1). Petitioner's mother's letter reflected the terrible abuse she suffered from his father, her travel from Mexico, the fear Petitioner exhibited as a child, his difficulties in school, and mental health issues. *Id.*, Exh. "SS" at 184–85. On February 26, 2016, defense counsel filed a joint letter from Robert and Maria Richter as mitigation evidence. *See* Answer (Doc. 55), Not. of Filing Def.'s Sentencing Mitigation Docs., *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Feb. 26, 2016) (Exh. "TT") (Doc. 55-1). This letter reflected Petitioner's difficulty with comprehension, his mental illness, the accident when he was run over by a car at the age of nine (9), and the effect of immigrating to the United States from Mexico as a child. *Id.*, Exh. "TT" at 188. This letter with "a couple moderate additions" was read into the record by Robert Richter during Petitioner's sentencing hearing. Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Sentencing) at 6:21–24 (Pima Cnty. Super. Ct. Mar. 10, 2016) (Exh. "DDDD") (Doc. 55-2). Additionally, the trial court also received Petitioner's Presentence Report ("PSR"). *See* Answer (Doc. 55), Richter PSR, *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Feb. 29, 2016) (Exh. "OO") (Doc. 55-1). The PSR reflected Petitioner's loss of a sibling to suicide, the incident where he was run over by a car, his education and employment histories, and substance use. *Id.*, Exh. "OO" at 162.

On February 29, 2016, the initial sentencing hearing was held, and defense counsel raised concerns regarding Petitioner's competence and moved for another Rule 11

evaluation.  *See* Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry at 151 (Pima Cnty. Super. Ct. Feb. 29, 2016) (Exh. "LL") (Doc. 55-1).  The trial court questioned Petitioner and ultimately ordered an additional assessment.  *Id.*, Exh. "LL" at 151–52.  The sentencing hearing was therefore continued.  *Id.*, Exh. "LL" at 152–53.  Prior to sentencing, Serena Gorgueiro, Psy.D. provided an Addenda to the Final Competency Report to the trial court.  *See* Answer (Doc. 55), Gorgueiro Addenda to the Final Competency Rpt., *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Mar. 3, 2016) (Exh. "UU") (Doc. 55-1).

On March 10, 2016, the trial court held a sentencing hearing for both Petitioner and his co-defendant.  *See* Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Sentencing) (Pima Cnty. Super. Ct. Mar. 10, 2016) (Exh. "DDDD") (Doc. 55-2).  At the outset of presenting mitigation witnesses, trial counsel stated, "Judge, we had previously discussed this before.  I was going to call Bob Richter.  He was just planning on reading something rather than having me examine him[.]"  *Id.*, Exh. "DDDD" at 4:24–5:2.  Robert Richter testified on behalf of Petitioner and read "a letter presented to Judge Tang, and there's a couple moderate additions, but this is on behalf of his mother and myself as well."  *Id.*, Exh. "DDDD" at 6:22–24.  Mr. Robert Richter testified regarding Petitioner's inability to read and write properly; his difficulties with understanding and communication; the help that he required in writing letters to the court; his lack of comprehension regarding "everything in the trial"; that he is easily manipulated; that he has a low IQ and had difficulty in school; his history of mental illness; his inability to think independently, normally, and logically; the abuse suffered by his mother at the hands of Petitioner's biological father; Petitioner's receipt of social security disability which was managed by his wife; and ultimately requested the court to incarcerate him nearby so that his mother could visit him.  *Id.*, Exh. "DDDD" at 6:21–10:11.  Defense counsel presented argument in which he directed the trial court to Petitioner's long mental health history, referred to the voluminous evidence that had been provided to the trial court, attempted to characterize Petitioner as someone who was not "inherently evil" but rather a victim of his mental

illness, highlighted his cognitive difficulties, noted that his graduation from high school was "more [] social promotion than any type of academic achievement[,]" indicated that he had been picked on and bullied throughout his life, and was readily manipulated. *Id.*, Exh. "DDDD" at 64:17–69:6. Accordingly, defense counsel sought a mitigated sentence. Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. at 68:25–69:6 (Sentencing) (Pima Cnty. Super. Ct. Mar. 10, 2016) (Exh. "DDDD") (Doc. 55-2).

The evidence presented to the trial court encompasses the areas that Petitioner now complains sentencing counsel failed to investigate. Petitioner urges that "even if Skitzki had chosen to offer written submissions in lieu of testimony, that decision would not have been sound, as live testimony at sentencing is always preferable." Petr.'s Reply (Doc. 81) at 67. Petitioner states that "Arizona courts have long recognized that live testimony has a quality and import that written submissions cannot duplicate." *Id.* (citing *State v. Talmadge*, 999 P.2d 192, 195 (Ariz. 2000)). Petitioner mischaracterizes *Talmadge* and *State v. Brady*, 594 P.2d 94, 96 (Ariz. 1979), the case upon which *Talmadge* relies, as requiring a preference for live testimony at sentencing. Both of those cases dealt with the presentation of witnesses during the guilt phase, where a jury was hearing testimony from a material witness. Here, the evidence was being presented solely to the trial judge.[21] Furthermore, a review of the record indicates that Petitioner's co-defendant only presented one live witness in mitigation. *See* Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Sentencing) (Pima Cnty. Super. Ct. Mar. 10, 2016) (Exh. "DDDD") (Doc. 55-2). Based upon trial counsel's statement at the outset of the hearing, *supra*, this Court surmises that there was an agreement that each Defendant would present one mitigation witness.

Given the totality of the evidence presented in support of mitigation, the Court finds that trial counsel did not "abandon[ ] their investigation of [the] petitioner's background

---

[21] In Arizona, judges are governed by the Arizona Code of Judicial Conduct which mandates that they "shall perform all duties of judicial office fairly and impartially." Ariz. Code of Jud. Conduct Rule 2.2. This requirement undercuts Petitioner's argument that a live witness is necessary.

after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (alterations in original) (citations omitted). "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* at 196 (alterations in original) (quoting *Strickland*, 466 U.S. at 689–90). The Court finds that sentencing counsel was not ineffective, and therefore PCR counsel was not unreasonable in declining to raise this claim on collateral review.

Petitioner has failed "to show 'that [either trial or PCR] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). As such, *Martinez* will not excuse his procedural default. *See Sexton v. Cozner*, 679 F.3d 1150, 1159–61 (9th Cir. 2012). Review of the record confirms that Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Accordingly, Petitioner's claim is procedurally defaulted and precluded from habeas review.

### f.  Ground B2: Intellectual disability evidence at sentencing

Petitioner asserts that because counsel "inaccurately stated that Mr. Richter was 'borderline IQ,' minimizing his client's impairments" and "conducted no investigation into Mr. Richter's adaptive deficits or intellectual disability prior to sentencing and presented no live intellectual disability expert witness to the trial court[,]" his assistance

- 45 -

1   was ineffective.  Third Amended Petition (Doc. 50) at 64.

2   ### *i.  Fair Presentation*

3   As discussed in Sections III.B. and IV.A.1.e.i, *supra*, the fair presentation

4   requirement mandates that a state prisoner must alert the state court "to the presence of a

5   federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004).  Petitioner did

6   not raise his ineffective assistance of sentencing counsel for an alleged failure to investigate

7   his adaptive deficits or intellectual disability in his PCR petition to the Rule 32 court. *See*

8   Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima

9   Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2).  Furthermore, Petitioner did not

10  raise this claim to the Arizona Court of Appeals on review of his PCR petition. *See* Answer

11  (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App.

12  Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).  As such, Petitioner did not fairly present his

13  claim to the state court.  As noted in Section IV.A.1.b.i., *supra*, "ineffective assistance

14  claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline

15  explication of the facts relating to it[.]" *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th

16  Cir. 2007).  As such, "a petitioner who presented any ineffective assistance of counsel

17  claim below can[not] later add unrelated instances of counsel's ineffectiveness to that

18  claim." *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619

19  F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective

20  assistance of counsel based on one set of facts, does not exhaust other claims of ineffective

21  assistance based on different facts").  Furthermore, "[a]s a general rule, when ineffective

22  assistance of counsel claims are raised, or could have been raised *in a Rule 32 post-*

23  *conviction relief proceeding*, subsequent claims of ineffective assistance will be deemed

24  waived and precluded." *State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006) (emphasis in

25  original) (quotations and citations omitted); *see also* Ariz. R. Crim. P. 32.2(a)(3).

26  Therefore, Petitioner's claim is procedurally defaulted and unavailable for review unless

27  he can show cause and prejudice for the default.

28  . . .

1

***ii.   No Cause and Prejudice to Excuse Default***

2      Where a habeas petitioner's claims have been procedurally defaulted, the federal

3 courts are prohibited from subsequent review unless the petitioner can show cause and

4 actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure

5 to raise claims in state appellate proceeding barred federal habeas review unless petitioner

6 demonstrated cause and prejudice). Petitioner relies on *Martinez v. Ryan*[22] to excuse any

7 procedural default of this claim.

8      Petitioner's contention that counsel's alleged mischaracterization of Petitioner's IQ,

9 alleged failure to investigate Mr. Richter's adaptive deficits or intellectual disability, and

10 lack of live intellectual disability expert witness during sentencing rendered his assistance

11 was ineffective is unsupported. As discussed in Section IV.A.1.e.ii., *supra*, defense

12 counsel submitted significant documentation to the trial court as mitigation evidence,

13 including a report from a mitigation specialist and the evaluations of various medical

14 professionals. Petitioner's mitigation specialist documented, *inter alia*, his "high order

15 cognitive deficits" and frontal lobe damage, as well as their effects. Answer (Doc. 55),

16 Mitigation Rpt. for Fernando Richter, *State v. Richter*, No. CR20135144-001 (Pima Cnty.

17 Super. Ct. Feb. 23, 2016) (Exh. "PP") (Doc. 55-1). Paul Simpson, Ed.D.'s Psychological

18 Evaluation documented Petitioner's WAIS-IV, full scale IQ at 63. Third Amended Petition

19 (Doc. 50), Simpson Psych. Eval. (Exh. "3") (Doc. 50-2) at 8. Dr. Simpson described

20 "Fernando's general cognitive ability [a]s within the extremely low range of intellectual

21 functioning, as measured by FSIQ." *Id.* Michael Christiansen, Ph.D.'s Rule 11 Evaluation

22 reviewed Petitioner's developmental, educational, and family history, and reported that

23 "[a] Psychoeducational Evaluation (7/05/2000) notes the defendant had borderline

24 defective range verbal IQ of 73 while performance IQ scores reached the average range."

25 Third Amended Petition (Doc. 50), Christiansen Rule 11 Eval. (Exh. "8") (Doc. 50-3) at

26 14. Dr. Christiansen described his scores as "consistent with learning disability, with

27 deficits in verbal and language abilities." *Id.* Additionally, Mr. Robert Richter provided

28

---

[22] 566 U.S. 1 (2012).

- 47 -

testimony regarding Petitioner's intellectual deficits and their effect on his life.  Answer
(Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. (Sentencing) at 6:21–10:11
(Pima Cnty. Super. Ct. Mar. 10, 2016) (Exh. "DDDD") (Doc. 55-2).   Contrary to
Petitioner's assertion, information regarding Petitioner's intellectual disabilities and
adaptive deficits were provided to the trial court from a variety of sources.  Moreover,
although counsel's description of Petitioner's IQ as "borderline" was not as low as that
reported by Dr. Simpson, it was consistent with the report relied on by Dr. Christiansen.
The Court finds that sentencing counsel was not ineffective, and therefore PCR counsel
was not unreasonable in declining to raise this claim on collateral review.

Petitioner has failed "to show 'that [either trial or PCR] counsel made errors so
serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the
Sixth Amendment.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*,
466 U.S. at 689).  As such, *Martinez* will not excuse his procedural default.  *See Sexton v.
Cozner*, 679 F.3d 1150, 1159–61 (9th Cir. 2012).  Review of the record confirms that
Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v.
Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . .
created a *possibility* of prejudice, but that they worked to his *actual* and substantial
disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis
in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d
1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting
his claims[,] . . . [and as such,] there is no basis on which to address the merits of his
claims.").  Neither has Petitioner "establish[ed] by clear and convincing evidence that but
for the constitutional error, no reasonable factfinder would have found [him] guilty of the
underlying offense."  28 U.S.C. § 2254(e)(2)(B).  Accordingly, Petitioner's claim is
procedurally defaulted and precluded from habeas review.

### g.  Ground C1: Failure to raise claims on appeal

Petitioner asserts that appellate counsel should have raised claims related to 1) "the
trial court's preclusion of the GEI defense"; 2) Petitioner's request for and the trial court's

denial of a change of counsel prior to trial; 3) the trial court's denial of defense counsel's motion for a directed verdict and sufficiency of the evidence; 4) the trial court's denial of defense counsel's motion to sever trial; 5) the trial court's denial of defense counsel's motion for a mistrial based on the State's expert witness psychiatrist's vouching regarding the victim's credibility; and 6) the admission of the State's expert witness psychiatrist's testimony during which he reviewed photographs of the victims and identified scars and opined about their relative age and the type of implement that may have caused them. Third Amended Petition (Doc. 50) at 68–77.

### *i.* *Fair Presentation*

As discussed in Sections III.B. and IV.A.1.b.i, *supra*, the fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004). Petitioner did not raise his ineffective assistance of appellate counsel regarding failures to raise specific claims in his PCR petition to the Rule 32 court. *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). Furthermore, Petitioner did not raise these claims to the Arizona Court of Appeals on review of his PCR petition. *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2). As such, Petitioner did not fairly present his claims to the state court. As noted in Section IV.A.1.b.i., *supra*, "ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]" *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007). As such, "a petitioner who presented any ineffective assistance of counsel claim below can[not] later add unrelated instances of counsel's ineffectiveness to that claim." *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other claims of ineffective assistance based on different facts"). Furthermore, "[a]s a general rule, when ineffective assistance of counsel claims are raised,

1   or could have been raised *in a Rule 32 post-conviction relief proceeding*, subsequent claims

2   of ineffective assistance will be deemed waived and precluded." *State v. Bennett*, 146 P.3d

3   63, 67 (Ariz. 2006) (emphasis in original) (quotations and citations omitted); *see also* Ariz.

4   R. Crim. P. 32.2(a)(3).   Therefore, Petitioner's claim is procedurally defaulted and

5   unavailable for review unless he can show cause and prejudice for the default.

6                        ***ii.   No Cause and Prejudice to Excuse Default***

7           Where a habeas petitioner's claims have been procedurally defaulted, the federal

8   courts are prohibited from subsequent review unless the petitioner can show cause and

9   actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure

10  to raise claims in state appellate proceeding barred federal habeas review unless petitioner

11  demonstrated cause and prejudice).   Petitioner asserts that "[t]he salient question in

12  analyzing a claim of ineffective assistance of appellate counsel is whether the unraised

13  issue, if raised, would have 'led to a reasonable probability of reversal.'"  Petr.'s Reply

14  (Doc. 81) at 74 (citing *Hurles v. Ryan*, 188 F. Supp. 3d 907, 922 (D. Ariz. 2016)).  This is

15  not the appropriate standard.  *Hurles* was a death penalty case, which the Ninth Circuit had

16  remanded to the district court for consideration, "pursuant to *Martinez*, Hurles' claim that

17  his counsel performed ineffectively by failing to raise a claim[.]"  *Hurles*, 188 F. Supp. 3d

18  at 918.  When *Hurles* was decided, "[t]he Ninth Circuit ha[d] expanded *Martinez* to include

19  procedurally defaulted claims of ineffective assistance of appellate counsel."  *Id.* at 921

20  (citations omitted).  The following year, however, the Supreme Court of the United States

21  foreclosed that rule.  *See Davila v. Davis*, 582 U.S. 521 (2017).  The Supreme Court

22  unequivocally declined to extend *Martinez* "to allow federal courts to consider a different

23  kind of defaulted claim—ineffective assistance of appellate counsel." *Id.* at 525.  As such,

24  Petitioner must demonstrate cause and prejudice to excuse his procedural default.

25          Petitioner has failed to meet this burden.  *Murray v. Carrier*, 477 U.S. 478, 494

26  (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of

27  prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his

28  entire trial with error of constitutional dimensions") (emphasis in original) (internal

1    quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir.

2    1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . .

3    [and as such,] there is no basis on which to address the merits of his claims.").  Neither has

4    Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional

5    error, no reasonable factfinder would have found [him] guilty of the underlying offense."

6    28 U.S.C. § 2254(e)(2)(B).  Accordingly, Petitioner's claim is procedurally defaulted and

7    precluded from habeas review.

8                    **2.  Due Process and Confrontation Rights**

9    Grounds D, E, G, H1, H2, and H3 relate to allegations regarding alleged due process

10   violations by the trial court.

11   In Ground D, Petitioner asserts that "the trial court's refusal to permit Mr. Richter

12   to plead GEI implicated both his due process and confrontation rights."  Third Amended

13   Petition (Doc. 50) at 84.  Petitioner argues that "[h]is jury was never able to hear the

14   overwhelming evidence of his serious mental illnesses[,] . . . [and] [he] was unable to

15   effectively cross-examine his wife/co-defendant[.]"  *Id.* (citations omitted).

16   In Ground E, Petitioner alleges that his due process rights were violated because he

17   "was deprived of his right to be competent at his trial."  *Id.* at 86.

18   In Ground G, Petitioner alleges that "[t]he trial court violated [his] federal due

19   process and fair trial rights when it repeatedly denied Mr. Richter's requests to sever his

20   trial from Sophia's[.]"  *Id.* at 89.

21   Grounds H1–H3 assert that "[t]he trial court violated Mr. Richter's federal due

22   process rights when it permitted the prosecution to introduce victim mental health evidence

23   that did not prove an element of the offence, vouch for the credibility of their key witnesses,

24   and introduce unqualified expert testimony, relieving the prosecution of its burden of proof

25   beyond a reasonable doubt."  *Id.* at 91 (citations omitted).  More specifically, in Ground

26   H1, Petitioner asserts that the State's expert witness psychiatrist "testified that the victims'

27   suffered from PTSD and other mental health issues due to Mr. Richter's acts."  Third

28   Amended Petition (Doc. 50) at 92.  Petitioner opines that this testimony was improper

- 51 -

1  because it "was not required to prove any element of the charges, but used to capitalize on

2  the jury's sympathy for the already sympathetic victims." *Id.* In Ground H2, Petitioner

3  asserts that the State's psychiatrist "improperly vouched for the truthfulness of the

4  victims[.]" *Id.* In Ground H3, Petitioner urges a due process violation because the State's

5  psychiatrist was allegedly "allowed . . . to testify beyond the scope of his expertise." *Id.*

### a. Fair Presentation

7  As discussed in Sections III.B., *supra*, the fair presentation requirement mandates

8  that a state prisoner must alert the state court "to the presence of a federal claim" in his

9  petition. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004). Petitioner did not raise any of these

10  due process claims or his confrontation clause claim on direct appeal or in his PCR petition

11  to the Rule 32 court. *See* Third Amended Pet. (Doc. 50), Appellant's Opening Br. (*Anders*),

12  *State v. Richter*, No. 2 CA-CR 2016-0112 (Ariz. Ct. App. Sept. 19, 2015) (Doc. 50-4);

13  *State v. Richter*, No. 2 CA-CR 2016-0112, 2017 WL 491137, at *1 (Ariz. Ct. App. Jan. 24,

14  2017); Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001

15  (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). Furthermore, Petitioner

16  did not raise these claims to the Arizona Court of Appeals on review of his PCR petition.

17  *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz.

18  Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2). As such, Petitioner did not fairly present

19  his claims to the state court. "[P]etitioner failed to exhaust state remedies and the court to

20  which the petitioner would be required to present his claims in order to meet the exhaustion

21  requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735

22  n.1 (citations omitted); Ariz. R. Crim. P. 32.2(a)(3) (2023). Accordingly, the Court finds

23  all of Petitioner's due process claims and his confrontation claim are procedurally defaulted

24  and unavailable for review unless he can show cause and prejudice for the default.

### b. No Cause and Prejudice to Excuse Default

26  Where a habeas petitioner's claims have been procedurally defaulted, the federal

27  courts are prohibited from subsequent review unless the petitioner can show cause and

28  actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure

to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner asserts that "an affirmative GEI determination constitutes a finding of innocence, so precluding the GEI defense constitutes a miscarriage of justice excusing any default."  Petr.'s Reply (Doc. 81) at 97.  Petitioner further asserts that "[a]lternatively, default of [these] claim[s] is excusable under *Martinez*."  *See id.* at 97–111.  Petitioner's contention are without merit.

As an initial matter, *Martinez* is inapplicable to the procedurally default of due process claims regarding the trial court's actions.  *See* Section IV.A.1.b., *supra*.  Moreover, Petitioner has not met his burden to demonstrate a fundamental miscarriage of justice to excuse default.  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id.* at 404.  "The gateway should open only when a petitioner presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

On February 28, 2014, defense counsel filed a Motion for Mental Condition Examination and Stay of Proceedings.[23]  *See* Answer (Doc. 55), Def.'s Mot. for Mental Condition Exam and Stay of Proceedings, *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Feb. 28, 2014) (Exh. "B") (Doc. 55-1).  On March 10, 2014, the trial court granted Defendant's motion for a Rule 11 examination and appointed two (2) doctors to examine Defendant.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry (Pima Cnty. Super. Ct. Mar. 10, 2014) (Exh. "C") (Doc. 55-1).  On March 21, 2014,

---

[23] The Court supplies information regarding the Rule 11 restoration proceedings to provide a complete timeline of events.

the trial court issued its order appointing the Rule 11 examiners.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry (Pima Cnty. Super. Ct. Mar. 21, 2014) (Exh. "D") (Doc. 55-1).  On June 9, 2014, the trial court found Petitioner incompetent but restorable, and ordered the necessary treatment for his restoration.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry (Pima Cnty. Super. Ct. June 8, 2014) (Exh. "F") (Doc. 55-1).  On September 8, 2014, the trial court found Petitioner restored and competent to stand trial.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry (Pima Cnty. Super. Ct. Sept. 8, 2014) (Exh. "G") (Doc. 55-1).

At the same hearing, defense counsel moved for a GEI evaluation to be completed, which the trial court granted.  *Id.*, Exh. "G."  On September 12, 2014, the trial court appointed Michael Christiansen, Ph.D. to evaluate Petitioner regarding his state of mind at the time of the offense.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Order (Pima Cnty. Super. Ct. Sept. 12, 2014) (Exh. "H") (Doc. 55-1).  On December 8, 2014, based upon Dr. Christiansen's report, the trial court found Petitioner "did not suffer from a mental disease or defect that would impair his ability to appreciate the wrongfulness of his conduct at the time of the alleged offense(s)[,]" and was therefore not entitled to present a GEI defense or plea at that time.  Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Minute Entry (Pima Cnty. Super. Ct. Dec. 8, 2014) (Exh. "I") (Doc. 55-1); Answer (Doc. 55), *State v. Richter*, No. CR20135144-001, Hr'g Tr. at 5:4–14 (Pima Cnty. Super. Ct. Dec. 8, 2014) (Exh. "NNN") (Doc. 55-1).  The trial court acknowledged that Petitioner was free to obtain an independent evaluation if he so chose.  *Id.*  Defense counsel retained Paul Simpson, Ed.D. to evaluate Petitioner, but his report did not conclusively address Petitioner's mental state at the time of the offenses.  *See* Third Amended Petition (Doc. 50), Simpson Psych. Eval. (Exh. "3") (Doc. 50-2).

In Arizona, "[a] person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong."  A.R.S. § 13-502(A).  "A mental disease or defect constituting legal insanity is an affirmative defense[,]"

- 54 -

1    and the defendant bears the burden to prove "legal insanity by clear and convincing

2    evidence." A.R.S. § 13-502(A), (C).  Here, the trial court granted defense counsel's motion

3    for evaluation, stayed the proceedings, appointed a qualified evaluator, and had Petitioner

4    evaluated for a GEI defense.  Upon receipt and review of Dr. Christiansen's report, the trial

5    court made its determination that the GEI defense was unavailable at that juncture.  The

6    Arizona statutory scheme for a GEI defense has been found to comport with due process.

7    *See Clark v. Arizona*, 548 U.S. 735, 756, 779 (2006).

8            Petitioner has not provided any evidence to support his contention that the trial court

9    was required to consider more than one expert evaluation.  Moreover, even if the trial court

10   had been presented with more than one expert report, it "could credit one expert over

11   another." *Apelt v. Ryan*, 878 F.3d 800, 837 (9th Cir. 2017) (acknowledging the state court's

12   ability to weigh expert opinion evidence in determining whether defendant suffered major

13   deficits in his adaptive behavior).  Furthermore, three (3) of the offenses for which

14   Petitioner was indicted took place over several months.  *See* Answer (Doc. 55), Amended

15   Indictment, *State v. Richter*, No. CR20135144-001 (Pima Cnty. Super. Ct. Dec. 6, 2013)

16   (Exh. "A").  As such, the Court finds Petitioner's claim that greater weight should be given

17   to Dr. Gorgueiro's GEI finding for Petitioner's "offense in the jail he committed a week

18   after the principal crimes" is unavailing.[24]  Third Amended Petition (Doc. 50) at 82.  The

19   _____

20           [24] Dr. Gorgueiro's report was prepared for Pima County Superior Court Case No.
     CR20135288-001.  It is unclear from the record that is was ever submitted to the trial court in
21   Petitioner's case from which this habeas arises (Case No. CR20135144-001).  The record reflects
     that the two cases were consolidated for Rule 11 purposes only.  Answer (Doc. 55), *State v. Richter*,
22   No. CR20135144-001, Minute Entry at 12 (Pima Cnty. Super. Ct. Mar. 10, 2014) (Exh. "C") (Doc.
     55-1).  Petitioner was arrested on November 26, 2013.  Third Amended Petition (Doc. 50) at 14.
23   Review of Dr. Gorgueiro's report demonstrates that Petitioner's mental health decompensated
     during the first days of incarceration.  Third Amended Petition (Doc. 50), Gorgueiro's Rpt. (Exh.
24   "2") at 12–13 ("In November [2013] . . . noted as emotionally unstable . . . [and] assessed as
     depressed but denied hallucinations and/or delusions"; "On December 1, 2013 he was described
25   as being cooperative but with severe anxiety, pressured speech and a tangential thought process";
     "On December 3, 2013 the defendant . . . reported[ly] made statements to the corrections officer
26   to 'Get me a gun and I'll shoot myself'; "On December 4, 2014, the defendant . . . appeared
     paranoid"; "On December 9, 2014, the day of the alleged offense, the defendant . . . made suicidal
27   statements[,]" "believed his wife was shot in the head[,]" and thought he would only be safe if he
     remained with the nurse.").  As such, Dr. Gorgueiro's findings do not support an inference that

28

- 55 -

1    Court further finds that Petitioner has failed to "show that it is more likely than not that no

2    reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*

3    *v. Delo*, 513 U.S. 298, 327 (1995).  As such, he has failed to demonstrate a fundamental

4    miscarriage of justice entitling him to excuse of his procedural default.

5         Petitioner has failed to otherwise demonstrate cause and prejudice to excuse his

6    procedural defaults.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show

7    not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his

8    *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

9    dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-*

10   *Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause

11   "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to

12   address the merits of his claims.").  Neither has Petitioner "establish[ed] by clear and

13   convincing evidence that but for the constitutional error, no reasonable factfinder would

14   have found [him] guilty of the underlying offense."   28 U.S.C. § 2254(e)(2)(B).

15   Accordingly, Petitioner's due process claims and confrontation claim are procedurally

16   defaulted and precluded from habeas review.

17        **B.  Merits Analysis of Properly Exhausted Claims**

18        The Court finds that Petitioner has exhausted Grounds A1 and C2 of his Third

19   Amended Petition (Doc. 50) and will address the merits of each claim.  The Court finds

20   that Ground F was procedurally defaulted, but will additionally address the merits.

21        **1.  Ground A1: IAC Regarding GEI Defense**

22        Petitioner alleges that trial counsel "fail[ed] to adequately investigate and pursue a

23   GEI defense after the trial court disallowed it based solely on the evaluation of its own

24   expert, Dr. Christiansen."  Third Amended Petition (Doc. 50) at 29.  Petitioner raised this

25   claim in his PCR petition.  *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*,

26   No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2).

27   Petitioner also presented this claim to the Arizona Court of Appeals.  *See* Answer (Doc.

28

Petitioner did not know right from wrong at the time of the offenses relevant to this case.

55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).   The Court has delineated the legal standards for assessing ineffective assistance of counsel claims in Section IV.A.1.a., *supra*.

In his PCR petition, Petitioner asserted that he was denied his Sixth Amendment right to counsel, because trial counsel was ineffective when he allegedly abandoned the presentation of a GEI defense.  Answer (Doc. 55), Petr.'s Pet. for PCR at 20–21, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2).  On July 31, 2018, the Rule 32 court issued its order denying Petitioner's Petition for Post-Conviction relief.  *See* Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).  The court outlined the *Strickland*[25] test which requires Defendant to prove counsel's performance was deficient and caused prejudice.  *Id.*  The Rule 32 court went on to evaluate Defendant's allegation of trial counsel's ineffectiveness "based on 'counsel's abandonment of presenting a Guilty Except Insane ('GEI') defense.'"  *Id.*   The court delineated the following timeline of counsel's work regarding Defendant's competency:

> ➤ **February 28, 2014** – Motion for Mental Condition Evaluation and Stay of Proceedings.
> - April 15, 2014 - Rule 11 Evaluation Report – Michael P. Christiansen, Ph.D. - **Ex 18A, p. 9**
>   - ❖ *"Competent"*
> - May 12, 2014 – Rule 11 Evaluation Report – Bradley R. Johnson, M.D. - **Ex 19, p. 7**
>   - ❖ *"Not Currently Competent, likely able to be able to [sic] brought to competence within a short period of time."*
>
> ➤ **September 8, 2014** – Requested a GEI Evaluation. *See* Minute Entry dated September 8, 2014.

---

[25] *Strickland v. Washington*, 466 U.S. 668 (1984).

- October 28, 2014 – GEI Evaluation Report – Michael P. Christiansen, Ph. D. - **Ex 18B, p. 9**

  ❖ *"Not afflicted with mental disease or defect of such severity that he did not know the criminal act was wrong at the time of the offense."*

➢ **September 25, 2014** – Retained Paul Simpson to Conduct Psychological Evaluation. *See* Appendix B, Exhibit 21, Psychological Evaluation.

- July 8, 2015 – Psychological Evaluation – Paul Simpson, Ed.D. – **Ex 21, p. 144**

  ❖ *"[B]ased on information obtained from available records and self-reporting regarding Defendant's mental health history and considered to have been possible present in a mild to moderate degree at or around the time of the offenses as described below.*

    - *295.90 Schizophrenia, with Delusion, multiple episodes, currently in partial remission;*

    - *317.0 Intellectual Developmental Disorder, Mild;*

    - *309.81 Posttraumatic Stress Disorder, by history and self-report;*

    - *Rule in / out 331.83 Major or Mild Neurocognitive Disorder Due to Traumatic Brain Injury."*

*Id.*, Exh. "14" at 46–47 (alterations in original) (punctuation in original).  The Rule 32 court observed that following defense counsel's request for a mental competency examination, the proceedings were stayed; two (2) evaluations occurred with Dr. Christiansen finding Defendant competent and suggesting possible malingering, and Dr. Johnson opining that Defendant was not currently competent but likely restorable; and Defendant was restored.  *Id.*, Exh. "14" at 45–47.  The Rule 32 court further noted that defense counsel sought a GEI evaluation, which was also performed by Dr. Christiansen.

Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 45–47 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4). The Rule 32 court also noted that "Dr. Christiansen concluded, 'In [his] professional opinion, data indicates at the time of the commission of the criminal act, the defendant was not afflicted with a mental disease or defect of such severity that he did not know the criminal act was wrong.'" *Id.*, Exh. "14" at 46. The Rule 32 court indicated that "[t]he trial judge accepted these findings and ruled Defendant ineligible for the GEI defense." *Id.* (citations omitted). The Rule 32 court found defense counsel's decisions not to seek reconsideration of the trial court's decision or otherwise pursue a second GEI evaluation were not unreasonable. *Id.* The Rule 32 court concluded that Defendant had failed to meet his burden to show defense counsel fell below prevailing norms or had been otherwise ineffective. *Id.*, Exh. "14" at 47.

The appellate court noted that "[t]he [Rule 32] court clearly identified the claims raised and resolved them correctly in its minute entry, which [the appellate court] adopt[ed]." Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision at 33 (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2) (citing *State v. Whipple*, 866 P.2d 1358, 1360 (Ariz. Ct. App. 1993)). The appellate court "reject[ed] Richter's assertion on review that the [Rule 32] court abused its discretion by denying his claim of ineffective assistance of trial counsel '[w]ithout factual analysis.'" *Id.*, Exh. "GGG" at 34 (second alteration in original). The appellate court further observed that "[a]lthough Richter contends he was prejudiced by counsel's failure to seek a neuropsychological evaluation after the court rejected a guilty-except-insane defense the first time, he has not presented any evidence that such an exam would have resulted in evidence different from that before the court in the first instance." *Id.* The appellate court concluded that the Rule 32 court "properly determined [Petitioner] had not established prejudice." *Id.*

On habeas review, Petitioner asserts that trial counsel "deficiently failed to pursue the GEI defense after it was disallowed based on Dr. Christiansen's report." Third

Amended Petition (Doc. 50) at 29. Petitioner asserts that Dr. Christiansen's finding that there was evidence of Petitioner's "malingering" "was unsupportable and absurd." Petr.'s Reply (Doc. 81) at 20. Dr. Christiansen reviewed Petitioner's medical and psychiatric treatment history. Third Amended Petition (Doc. 50) , Christiansen Eval. 10/2/2014 (Exh. "10") (Doc. 50-4) at 4–6. Dr. Christiansen observed that Petitioner's COPE psychiatrist described him "as '*mentally stable*' on 11/27/2012, 12/31/2012 and 3/8/2013." *Id.*, Exh. "10" at 5 (emphasis in original). On September 13, 2013, COPE staff described Petitioner "as having perseverative thought process and '*paranoid thought patterns*' were listed but not specified." *Id.* (emphasis in original). Dr. Christiansen reported that "[t]he Title 36 evaluation by Dr. Keller 12/30/2013 note[d] the defendant was noted the day after his intake to the jail "*to be anxious and detoxing off of opiates and benzodiazepines.*" *Id.*, Exh. "10" at 6 (emphasis in original). Dr. Christiansen further noted that "[a] Conmed mental health clinician noted an impression of psychosis N[ot ]O[therwise ] S[pecified] versus malingering on 12/13/2013." *Id.* Dr. Christiansen further noted that "[t]hroughout December 2013 the defendant presented inconsistently in terms of reported delusional though content[,] [and] [h]e was not described in a manner that is clearly compelling of genuine ongoing delusions." Third Amended Petition (Doc. 50), Exh. "10" at 6. As an example, Dr. Christiansen noted that "[o]n 1/03/2014 he reported '*he no longer thinks that COs are trying to kill him*,' despite being noncompliant with psychotropic medications." *Id.* (emphasis in original). Regarding Petitioner's medications, Dr. Christiansen reported that:

> [Petitioner] affirmed that he was taking medications "***since my car accident***" and that prior to the crime he was taking them, "***sometimes a little more than I needed to.***" Specifically taking "***2 Zyprexa; just to help me out with my voices and stuff.***" He also endorsed taking "***Valiums***" to help him sleep. He then reported taking Trazodone, affirming he took more than prescribed by COPE to help him sleep. Despite his reported vague recall for other information he reported specific information regarding medications, that he was supposed to take "***Zyprexa only once a day***" but the day prior to his arrest he took "***2 Zyprexa's and the Valiums, 6 to 8 pills, plus all kind of others***" prescribed to him. He recalled being prescribed "***one Zyprexa and Valium, limit four per day.***" He recalled taking "***oxycodone and***

***ibuprofen . . . For hand pain.***"

*Id.*, Exh. "10" at 7 (emphasis and alterations in original). Dr. Christiansen found incongruity with Petitioner's "reporting details regarding his medications and some of his activities, [but] he also claimed '***I don't remember nothing[,] I just remember people being everywhere***" at the time of his arrest including a '***big black person.***'" *Id.*, Exh. "10" at 8. Dr. Christiansen also noted that "[t]he defendant intimated having symptoms of severe psychosis upon arrival to the jail, '***hearing voices all the time . . . Talking about raping Sofia; killing me and Sofia . . . I heard Sofia screaming in the background***'" *Id.* Dr. Christiansen also reviewed law enforcement records and noted that "[a] TPD incident report dated 11/30/2013 describes behavior from the defendant that seems to reflect malingering, being unresponsive but then showing normal vital signs and '*after hearing he would not be transported*' to the hospital the defendant '*woke up and sat up on his own[;] [h]e then placed himself in the back seat of the patrol vehicle.*" Third Amended Petition (Doc. 50), Exh. "10" at 9 (emphasis in original). Dr. Christiansen administered the SIRS-2 as a symptom validity test. *Id.* "The defendant was asked to report on symptoms he experienced in the period of time from about one week prior, up to the time of his arrest." *Id.* Dr. Christiansen observed that "[w]hile [Petitioner] reported poor recall on direct questioning for this time, on this instrument the defendant made several comments suggesting intact recall such as having difficulty making every day [sic] decisions "***yeah because my voices always kicked in . . . Tell me to do something different.***" *Id.* (emphasis in original). Dr. Christiansen reported that Petitioner "scored in the <u>*definite*</u> range of malingering on 2 of 8 primary scales, and scored in the <u>*probable*</u> range on 4 other scales[,] . . . leading to a classification decision of <u>***feigning***</u>." *Id.* (emphasis in original). Based upon the testing, his examination, and other evidence, Dr. Christiansen concluded that Petitioner was not afflicted with a mental disease of defect of such severity that he did not know the criminal act was wrong. Third Amended Petition (Doc. 50), Exh. "10" at 10.

Petitioner submits an evaluation of Petitioner by Bhushan S. Agharkar, M.D., D.F.A.P.A. to assert, *inter alia*, that Dr. Christiansen's use of the SIRS-2 effort test

1  inappropriate due to Petitioner's "low intellectual functioning, head trauma, and/or active

2  psychosis." Third Amended Petition (Doc. 50), Agharkar Eval. (Exh. "17") (Doc. 50-5) at

3  201. As discussed in Section III.D., *supra*, "review under § 2254(d)(1) is limited to the

4  record that was before the state court that adjudicated the claim on the merits." *Cullen v.*

5  *Pinholster*, 563 U.S. 170, 181 (2011). As such, the Court will not consider Dr. Agharkar's

6  evaluation.[26]  Also, as discussed in Section IV.A.2.b., *supra*, the Court finds Dr.

7  Gorgueiro's GEI finding in the subsequent case not relevant to assessing Dr. Christiansen's

8  findings in this case. Furthermore, to the extent that Dr. Gorgueiro's evaluation was not

9  before the state court in the underlying case relevant to this habeas, it is precluded from

10  review.

11      Petitioner also asserts that "Respondent inexplicably argues that despite a merits

12  ruling on this claim by the Court of Appeals, the 'last reasoned decision' was made by the

13  PCR court." Petr.'s Reply (Doc. 81) at 23 (citations omitted). Petitioner opines that "the

14  Court of Appeals decision denying relief was the last reasoned decision on this claim." *Id.*

15  (citations omitted). "Although [the] AEDPA generally requires federal courts to review

16  one state decision, if the last reasoned decision adopts or substantially incorporates the

17  reasoning from a previous state court decision, we may consider both decisions to fully

18  ascertain the reasoning of the last decision." *Edwards v. Lemarque*, 475 F.3d 1121, 1126

19  (9th Cir. 2007) (quotations and citations omitted). Because the Arizona Court of Appeals

20  unequivocally adopts the Rule 32 court's decision, this Court will consider both decisions.

21  *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision at 33

22

23      [26] Aside from the proscription on considering information beyond the State court record,
the Court notes that there are several deficiencies which make Dr. Agharkar's evaluation

24  unhelpful. First, Dr. Agharkar's evaluation took place on September 19, 2021, well after the 2017
incident which Petitioner now asserts has so compromised his mental acuity that his continued

25  incarceration violates the Eighth Amendment. *See* Third Amended Petition (Doc. 50) at 93–116
& Agharkar Eval. (Exh. "17"). Dr. Agharkar acknowledges the limitations this places on any

26  current evaluation. *See* Third Amended Petition (Doc. 50), Exh. "17" at 202–204. Dr. Agharkar
also acknowledges the limited value of retrospective examinations. *Id.*, Exh. "17" at 200. Finally,

27  one of Dr. Agharkar criticisms of Dr. Christiansen's findings was because he "only spent ninety
minutes evaluating Mr. Richter"; however, this fails to account for the additional time Dr.

28  Christiansen had previously spent examining Petitioner under Rule 11. *See id.*, Exh. "17" at 201.

1   (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2) (citing *State v. Whipple*, 866 P.2d
2   1358, 1360 (Ariz. Ct. App. 1993)).

3       "In general, an attorney is entitled to rely on the opinions of mental health experts
4   in deciding whether to pursue an insanity or diminished capacity defense." *Williams v.*
5   *Woodford*, 384 F.3d 567, 611 (9th Cir. 2004) (citations omitted).  The Ninth Circuit has
6   "previously held that defense counsel reasonably declined to pursue a mental-state defense
7   when two experts opined that the defendant was neither insane nor diminished in mental
8   capacity, and a third could not reach a conclusion." *Id.* (citations omitted).  Furthermore,
9   "the passage of time and the difficulties inherent in evaluating the defendant's competence
10  from a written record reduce the likelihood of an accurate retrospective determination." *Id.*
11  at 610 (citing *Pate v. Robinson*, 383 U.S. 375, 387 (1966)).

12      Here, the PCR court properly delineated the *Strickland* test for assessing counsel's
13  performance.  Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001,
14  Ruling—In Chambers Ruling Re: Denial of PCR at 45 (Pima Cnty. Super. Ct. July 31,
15  2018) (Exh. "14") (Doc. 50-4).  The PCR court then provided a timeline of counsel's work
16  regarding Defendant's competency.  *Id.*, Exh. "14" at 46–47.  The Rule 32 court noted that
17  upon Petitioner's restoration, defense counsel sought a GEI evaluation.  *Id.*, Exh. "14" at
18  45–47.  The Rule 32 court reiterated Dr. Christiansen's professional opinion that "at the
19  time of the commission of the criminal act, the defendant was not afflicted with a mental
20  disease or defect of such severity that he did not know the criminal act was wrong." *Id.*,
21  Exh. "14" at 46.  This finding was accepted by the trial judge and Defendant was ruled
22  ineligible for the GEI defense.  *Id.* (citations omitted).  The Rule 32 court concluded that
23  Defendant had failed to meet his burden to show defense counsel fell below prevailing
24  norms or had been otherwise ineffective.  Third Amended Pet. (Doc. 50), *State v. Richter*,
25  No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 47 (Pima Cnty.
26  Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).  The appellate court agreed and further
27  noted that "[a]lthough Richter contends he was prejudiced by counsel's failure to seek a
28  neuropsychological evaluation after the court rejected a guilty-except-insane defense the

first time, he has not presented any evidence that such an exam would have resulted in evidence different from that before the court in the first instance." Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision at 34 (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).

Despite Petitioner's exhortations, Dr. Christiansen did not conclude that Petitioner was not schizophrenic, or have other mental illnesses, rather Dr. Christiansen found that those illnesses did not keep Petitioner from appreciating the wrongfulness of his conduct. *See Clark v. Arizona*, 548 U.S. 735, 746 (2006) (alterations in original) (defendant's paranoid schizophrenia "did not . . . distort his perception of reality so severely that he did not know his actions were wrong.") Furthermore, trial counsel retained Dr. Simpson to evaluate Petitioner, although this evaluation did not conclude that Petitioner did not know his actions were wrong. Petitioner assumes that this is a failing attributable to trial counsel. On habeas review, "[c]ounsel's competence, however, is presumed[.]" *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (citing *Strickland*, 466 U.S. at 689). "Under § 2254(d), a state prisoner 'must show that the state court's ruling on the claim being presented in the federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Walden v. Shinn*, 990 F.3d 1183, 1195 (9th Cir. 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Petitioner has failed to make such a showing nor has he shown "'that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Accordingly, the Court finds that Petitioner has failed to meet his burden to show that the appellate court's findings were contrary to, or an unreasonable application of, clearly established Supreme Court precedent or resulted in a decision based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). As such, Petitioner's claim regarding ineffective assistance of trial counsel for an alleged failure to pursue a GEI defense is denied.

. . .

**2.** **Ground C2: IAC Regarding *Anders* Brief**

Petitioner alleges that "the *Anders* brief filed by [appellate counsel] contained numerous errors and omissions and failed to present the strongest arguments in favor of Mr. Richter." Third Amended Petition (Doc. 50) at 77–78. Petitioner raised this claim in his PCR petition. *See* Answer (Doc. 55), Petr.'s Pet. for PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). Petitioner also presented this claim to the Arizona Court of Appeals. *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2). The Court has delineated the legal standards for assessing ineffective assistance of counsel claims in Section IV.A.1.a., *supra*. As discussed in Section IV.A.1.g., *supra*, the individual claims that Petitioner argues appellate counsel should have brought are procedurally defaulted and will not be reviewed on habeas. Arguably, the addition of those claims fundamentally altered Petitioner's claim of ineffective assistance of appellate counsel. *See Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) ("conclud[ing] that the new allegations and evidence Dickens presented to the federal court fundamentally altered Dickens's previously exhausted IAC claim."); *see also Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988) (citations omitted) ("In habeas proceedings, the federal courts are not free to entertain new evidence that places the claim in a significantly different posture, when that evidence was never presented to the state courts.") As such, the entirety of Ground C would be procedurally exhausted. Because Petitioner exhausted this portion of the claim, however, the Court will consider it.

In his PCR petition, Petitioner asserted that appellate counsel did not adequately review the record prior to filing an *Anders* brief, depriving Petitioner of an adequate appeal. Answer (Doc. 55), Petr.'s Pet. for PCR at 17–19, 21–22, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb. 27, 2018) (Exh. "EEE") (Doc. 55-2). On July 31, 2018, the Rule 32 court issued its order denying Petitioner's Petition for Post-Conviction relief. *See* Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR (Pima Cnty. Super. Ct. July 31,

2018) (Exh. "14") (Doc. 50-4).   The Rule 32 court properly outlined the *Strickland* standard.  *Id.*, Exh. "14" at 47.  The court also stated the *Anders* requirements of appellate counsel, including filing "a brief referring to anything in the record that might arguably support the appeal."  *Id.*, Exh. "14" at 48.  The Rule 32 court observed that "appellate counsel's 'Statement of the Relevant Facts' in his *Anders* brief spans 18 pages with specific citations to the transcripts of Defendant's 15-day trial."  *Id.*  The Rule 32 court further observed that "appellate counsel found no arguable issues for appeal or questions of law[;] . . . asked the Court of Appeals to review the record for error, filing a motion for leave to allow Defendant to submit a supplemental brief in *propria persona*[;] Defendant then failed to do so[;] [and] [t]he Court of Appeals searched the record for fundamental, reversible error and found none, ultimately affirming Defendant's convictions."  *Id.*  The Rule 32 court found "Defendant's conclusory claims [ ] inadequate as he fail[ed] to cite to any specific error(s) in either facts or law[,] . . . [and] [he] fail[ed] to show prejudice as the facts and law against Defendant were overwhelming[.]"  Third Amended Pet. (Doc. 50), *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR at 48 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4).  The Rule 32 court concluded that "appellate counsel fulfilled his obligations to the Defendant under *Anders*."  *Id.*  The Arizona Court of Appeals adopted the Rule 32 court's summary denial.  *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2018-025-PR, Mem. Decision (Ariz. Ct. App. Apr. 8, 2019) (Exh. "GGG") (Doc. 55-2).

Petitioner's claim that appellate counsel filed a deficient *Anders* brief is without merit.  The record indicates that appellate counsel complied with the Arizona procedures delineated in *State v. Clark*, 2 P.3d 89, 96 (Ariz. Ct. App. 1999).  *See* Section I.B. at n.5, *supra* (outlining Arizona's procedure for filing an *Anders* brief).  "It is not enough 'to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Furthermore, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

1   understood and comprehended in existing law beyond any possibility for fairminded
2   disagreement." *Id.* at 103.

3         Here, Petitioner has failed to show "'that [appellate] counsel made errors so serious
4   that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth
5   Amendment.'" *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).  Accordingly, the Court
6   finds that Petitioner has failed to meet his burden to show that the appellate court's findings
7   were contrary to, or an unreasonable application of, clearly established Supreme Court
8   precedent or resulted in a decision based on an unreasonable determination of the facts.
9   *See* 28 U.S.C. § 2254(d).  As such, Petitioner's claim regarding ineffective assistance of
10   appellate counsel for an allegedly deficient *Anders* brief is denied.

11         **3.  Ground F: Denial of New Counsel**

12         Petitioner alleges that he was deprived of his right to counsel when the trial court
13   denied his motion for new counsel.  Third Amended Petition (Doc. 50) at 86–89.  Petitioner
14   further urges that because he had an irreconcilable conflict with trial counsel, the state
15   courts' determinations that he was not entitled to new counsel were an unreasonable
16   application of Supreme Court precedent and "based on an unreasonable determination of
17   the facts." *Id.* at 88–89; *see also* Petr.'s Reply (Doc. 81) at 100–103.

18         **a.  Procedural default**

19         This claim is procedurally defaulted.  In his PCR Petition, Petitioner claims that his
20   "right to counsel" was violated because "[d]espite two letters from Defendant[,] . . . the
21   [c]ourt with no notice to Defendant, and no time for Mr. Skitzki to confer privately with
22   Defendant, conducted an inadequate *Torres* mini-hearing." *See* Answer (Doc. 55), Petr.'s
23   Pet. for PCR at 22, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. Feb.
24   27, 2018) (Exh. "EEE") (Doc. 55-2).  Petitioner further referenced "a complete breakdown
25   in communications or an irreconcilable conflict[.]" *Id.*  Petitioner does **not** reference the
26   Sixth Amendment to the United States Constitution until his Reply.  *See* Answer (Doc. 55),
27   Def.'s Reply to Pet. for PCR at 28, *State v. Richter*, No. CR-20135144-001 (Pima Cnty.
28   Super. Ct. Feb. 27, 2018) (Exh. "FFF") (Doc. 55-2).  As such, this claim was not "fairly

presented" to the State courts and is now procedurally defaulted.  *State v. Lopez*, 221 P.3d 1052, 1054 (Ariz. Ct. App. 2009) (in a Rule 32 proceeding, issues raised for the first time in reply may be deemed waived); *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004) (state prisoner must alert the state court "to the presence of a federal claim" in his petition); Ariz. R. Crim. P. 32.2(a).

Petitioner has failed to otherwise demonstrate cause and prejudice to excuse the procedural default.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  Accordingly, Petitioner's claim is procedurally defaulted and precluded from habeas review.

Additionally, the Rule 32 court's order regarding the trial court's denial of Defendant's motion for new counsel focuses on Arizona state law, and correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  However, "federal courts on habeas corpus review of state prisoner claims, . . . will presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, **or to be interwoven with the federal law**, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722, 734–35 (emphasis added) (quotations and citation omitted).  Furthermore, "when a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in

1   a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal)

2   that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289,

3   293 (2013).  Because the Rule 32 court's order obliquely references the Sixth Amendment

4   right to counsel, the Court will address the merits of this claim.

5   ### b.  Merits analysis

6   "In all criminal prosecutions, the accused shall enjoy the right . . . to have the

7   Assistance of Counsel for his defence."   U.S. Const., amend. VI.   "[A]n indigent

8   defendant[, however,] does not have an unqualified right to the appointment of counsel of

9   his own choosing." *Morris v. Slappy*, 461 U.S. 1, 10 (1983) (quotations and citations

10   omitted).  "In evaluating a trial court's denial of a motion for new counsel, [a federal court]

11   consider[s] a number of factors, including the timeliness of the motion, the adequacy of the

12   court's inquiry into the defendant's complaint, and whether the conflict between the

13   defendant and his counsel was so great that it resulted in a total lack of communication

14   preventing an adequate defense." *Hudson v. Rushen*, 686 F.2d 826, 829 (1982) (citations

15   omitted).  Relying on state law, the Rule 32 court outlined the factors for consideration

16   when addressing a request to change counsel, to include 1) the existence of an

17   irreconcilable conflict; 2) whether new counsel would be confronted by the same conflict;

18   3) timing of the motion; 4) inconvenience to witnesses; 5) amount of time elapsed since

19   the alleged offense; 6) defendant's proclivity to change counsel; and 7) quality of counsel.

20   *Id.*, Exh. "14" at 42–43 (quoting *State v. Moody*, 968 P.2d 578, 580 (Ariz. 1998) (citations

21   omitted)).  The court further observed that "in most cases, the 'quality of counsel' factor

22   will not be a consideration when a defendant seeks a substitution of counsel." *Id.*, Exh.

23   "14" at 43 (citing *State v. Torres*, 93 P.3d1056, 1060 (Ariz. 2004)).  Because Arizona's

24   *Moody* list of factors encompasses the non-exhaustive list in *Hudson*, the Court finds that

25   the Rule 32 court delineated the proper standard.

26   The Rule 32 court noted that upon receipt of two *ex parte* letters requesting change

27   of counsel, it held a *Torres* hearing at the earliest opportunity, which was eight (8) weeks

28   before trial and twenty-one (21) months after indictment.  Third Amended Pet. (Doc. 50),

1  *State v. Richter*, No. CR20135144-001, Ruling—In Chambers Ruling Re: Denial of PCR

2  at 43 (Pima Cnty. Super. Ct. July 31, 2018) (Exh. "14") (Doc. 50-4). The court reviewed

3  the *Torres* hearing record, including Defendant's and counsel's respective positions. *Id.*;

4  *see also* Section IV.A.1.b.ii., *supra*. The Rule 32 court also reviewed Defendant's claims

5  to Bradley Johnson, M.D. regarding the number of meetings with counsel, found those

6  statements to be inaccurate, and observed that prior to Defendant's letters to the court, "trial

7  counsel visited with Defendant a minimum of 12 times, most for 'unknown duration(s).'"

8  *Id.*, Exh."14" at 44. The Rule 32 court concluded that Defendant had failed to meet his

9  burden to show either a complete breakdown in communication or an irreconcilable

10  conflict. *Id.*, Exh. "14" at 43–44.

11  "Factual determinations by state courts are presumed correct absent clear and

12  convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits

13  in a state court and based on a factual determination will not be overturned on factual

14  grounds unless objectively unreasonable in light of the evidence presented in the state-

15  court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003). Review

16  of the state court record confirms that "based on the record and on [Petitioner's] testimony

17  during the motion, there is no evidence of a total lack of communication between

18  [Petitioner] and his attorney resulting in a complete inability to present a defense." *Haines*

19  *v. Roe*, 90 Fed. Appx. 525, 528 (9th Cir. 2004). The Court finds that Petitioner has failed

20  to meet his burden to show that the appellate court's findings were contrary to, or an

21  unreasonable application of, clearly established Supreme Court precedent or resulted in a

22  decision based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

23  As such, Petitioner's claim is denied.

24  ### C. Untimely Claims

25  The Court finds that Petitioner's Ground I is untimely and therefore unreviewable

26  on habeas. In Ground I, Petitioner asserts that after a 2017 prison assault he is "unable to

27  form a rational understanding of what he was convicted of and why he is in prison." Third

28  Amended Petition (Doc. 50) at 93. Petitioner further asserts that his continued

incarceration under these circumstance violates the Eighth Amendment. *Id.* at 93–116.

"Federal Rules of Civil Procedure 15(c)(1)(B) and 10(c) apply in habeas proceedings. *Ross v. Williams*, 950 F.3d 1160, 1166 (9th Cir. 2020). Rule 15 provides, in relevant part: "An amendment to a pleading relates back to the date of the original pleading when[] . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Furthermore, as discussed in Section II., *supra*, the AEDPA mandates a one-year statute of limitations. 28 U.S.C. § 2244(d)(1).

Petitioner's habeas petition was required to be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 569 U.S. 383 (2013). On January 24, 2017, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on direct review. *See State v. Richter*, No. 2 CA-CR 2016-0112, 2017 WL 491137 (Ariz. Ct. App. Jan. 24, 2017). Petitioner did not seek review the Arizona Supreme Court. *See* Answer (Doc. 55), *State v. Richter*, No. 2 CA-CR 2016-0112, Mandate (Ariz. Ct. App. Apr. 12, 2017) (Exh. "BBB") (Doc. 55-1). As such, Petitioner's judgment became final on became final on February 23, 2017, thirty (30) days after the appellate court entered its decision. *See* Ariz. R. Crim. P. 31.21(b)(2). Therefore, limitations period for AEDPA purposes began to run on February 24, 2017. On May 8, 2017, Petitioner filed his Notice of Post-Conviction Relief, thereby tolling the limitations period. *See* Answer (Doc. 55), Petr.'s Not. of PCR, *State v. Richter*, No. CR-20135144-001 (Pima Cnty. Super. Ct. May 8, 2017) (Exh. "CCC") (Doc. 55-1). At this point seventy-three (73) days had elapsed. Petitioner's post-conviction proceedings continued until September 23, 2019, when the Arizona State Supreme Court denied review. Answer (Doc. 55), *State v. Richter*, No. CR-19-0157-PR, Memorandum (Ariz. Sept. 23, 2019) (Exh. "III") (Doc. 55-2). Accordingly, the limitations period began to run on September 24, 2019. The one-year statute of limitations ended on July 14, 2020.

Petitioner's original habeas petition was timely filed on May 13, 2020. *See* Petition

1   (Doc. 1).  Petitioner's Third Amended Petition (Doc. 50) was filed on December 21, 2021.

2   "[A]n amendment made after the statute of limitations has run 'relates back to the date of

3   the original pleading,' thereby avoiding AEDPA's time bar, when 'the amendment asserts

4   a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted

5   to be set out—in the original pleading." *Walden v. Shinn*, 990 F.3d 1183, 1202 (9th Cir.

6   2021) (quoting Fed. R. Civ. P. 15(c)(1)(B)).  "[R]elation back requires a single course or

7   pattern of conduct—not factually and temporally unrelated conduct arising out of the same

8   underlying proceeding." *Ross v. Williams*, 950 F.3d 1160, 1171 (9th Cir. 2020) (en banc).

9          Here, Petitioner's Ground I relates to alleged cognitive and mental health decline

10  following a 2017 prison assault.  Third Amended Petition (Doc. 50) at 93–116.  This claim

11  is wholly unrelated to the alleged errors arising from the 2013 offenses, criminal trial,

12  appeal, and post-conviction proceedings.  "[T]he actors [are] different, the alleged error

13  [is] different, and the time [the] claim[s] arose [is] different[.]" *Walden*, 990 F.3d at 1203

14  (citations omitted).  "Thus, the 'barrier to relation back' here 'is the difference between

15  [the claims'] respective factual predicates.'" *Id.* (alterations in original) (quoting *Alfaro v.*

16  *Johnson*, 862 F.3d 1176, 1184 (9th Cir. 2017)).

17         The Supreme Court of the United States has held "that § 2244(d) is subject to

18  equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  The

19  Ninth Circuit Court of Appeals "will permit equitable tolling of AEDPA's limitations

20  period only if extraordinary circumstances beyond a prisoner's control make it impossible

21  to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (quotations

22  and citations omitted).   Moreover, Petitioner "bears the burden of establishing two

23  elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

24  circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also*

25  *Holland*, 130 S. Ct. at 2562 (quoting *Pace*).

26         Counsel was appointed in this matter on May 21, 2020 and were co-counsel on the

27  2019 civil rights suit arising from the 2017 incident.  *See Richter v. Romero,* et al.*,* No.

28  CV-19-05513-DGC (JZB), Docket (D. Ariz.).  As such, counsel have been aware from the

beginning about the underpinnings of this claim.  Counsel asserts that Petitioner can prove entitlement to equitable tolling due to mental incapacity.  Petr.'s Response (Doc. 81) at 115.  Petitioner, however, has been represented by counsel and "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error."  *Coleman*, 501 U.S. at 753 (internal quotations omitted).  The record does not support a finding that Petitioner has been pursuing his rights diligently here.  Furthermore, Petitioner has failed to meet the "very high threshold" of establishing that extraordinary circumstances beyond his control made it impossible for him to timely file a habeas petition *and* that those extraordinary circumstances were the cause of his untimeliness.  *United States v. Battles*, 362 F.3d 1195, 1197 (9th Cir. 2004).  As such, Petitioner is not entitled to equitable tolling and his habeas petition as to Ground I is untimely.  The Court recommends that Ground I be denied because it is untimely.[27]

### D. Evidentiary Hearing

As outlined in Section III.D., *supra*, the grounds for an evidentiary hearing are narrow.  "Either a claim must rely on (1) a 'new' and 'previously unavailable' 'rule of

---

[27] Additionally, this claim was not "fairly presented" to the State courts and is now procedurally defaulted.  *Rose v. Lundy*, 455 U.S. 509, 520 (1982) (exhaustion requirements "provide[] a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."); *Coleman*, 501 U.S. 722, 735 n.1 (1991) (citations omitted) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."); Ariz. R. Crim. P. 32.2(a).

Petitioner has failed to otherwise demonstrate cause and prejudice to excuse his procedural defaults.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S. Ct. 2639, 2648, 91 L. Ed. 2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  As an aside, it remains unclear that habeas review is the proper forum for the relief Petitioner seeks, rather it may be a proper issue for clemency proceedings.

constitution law' made retroactively applicable by th[e] [Supreme] Court, or (2) 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022) (citing 28 U.S.C. §§ 2254(e)(2)(A)(i), (ii). A review of the record and claims in this case demonstrates that Petitioner has not met his burden to show that he can satisfy either of these exceptions. Furthermore, even if he could show diligence, he has not provided "'clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Id.* (citing 28 U.S.C. § 2254(e)(2)(B)). Accordingly, Petitioner's requests for an evidentiary hearing will be denied.

## V.   CONCLUSION

Based upon the foregoing, the Court finds that Petitioner Fernando Hernandez Richter's habeas claims are either procedurally defaulted, without merit, or untimely and recommends that his Third Amended Petition (Doc. 50) be denied. The Court additionally finds that an evidentiary hearing is unwarranted in this case.

## VI.   RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Third Amended Petition for a Writ of Habeas Corpus (Doc. 50).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Judge. If objections are filed, the parties should use the following case number: **CV-20-0205-TUC-CKJ**.

. . .

- 74 -

1         Failure to file timely objections to any factual or legal determination of the

2    Magistrate Judge may result in waiver of the right of review.

3         Dated this 29th day of February, 2024.

4

5

6    Eric J. Markovich
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28